MOSE (a SLAVE) vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Return of indictment.*—It is not a valid objection to an indictment, properly returned, endorsed and filed, that the fact of its return is not recited on the minutes of the court.

2. *Sufficiency of verdict.*—A general verdict of guilty, under an indictment

containing both good and bad counts, will be referred to the good counts, and the judgment of conviction thereupon sustained. ⋀

3. *Same.*—The crime of murder, when committed by a slave, is not divided into degrees, (Code, § § 3312–14 ;) consequently, a general verdict of guilty, not specifying the degree of the offense, is sufficient.

4. *Admissibility of dying declarations.*—The deceased having been shot by night, by some unknown person, his dying declarations, to the effect that the prisoner, who was one of his employer's slaves, " was the only slave on the place who was at enmity with him," are not competent evidence against the prisoner.

FROM the Circuit Court of Perry.

Tried before the Hon. PORTER KING.

THE indictment in this case was found at the fall term, 1858, of the circuit court of Dallas, and contained two counts; the first charging, "that Mose, *alias* Moses, a negro man slave, unlawfully, and with malice aforethought, killed Martin Oaks, by shooting him with a gun"; and the second, "that Mose, *alias* Moses, a negro man slave, unlawfully, and with malice aforethought, killed Martin Oaks, a white person, by shooting him with a pistol." The trial was removed by the prisoner to the circuit court of Perry, and was there had at the fall term, 1859.

On the trial, as the bill of exceptions shows, when the State offered to read in evidence the certified transcript from the records of the circuit court of Dallas, " the prisoner objected to the copy of the indictment therein contained being read to the jury, and to his being required to answer and defend himself against the same; and proved to the court, in support of his objection, that at the term of the circuit court of Dallas when the grand jury set forth in the caption to said transcript was in attendance before said court, and before said term of the court, and ever since, he had been in close confinement in the jails of Perry and Dallas counties. The point of the prisoner's objection was, that it did not sufficiently appear by said transcript that the identical indictment therein, on which he was about to be tried, was found by the grand jury set forth in the caption thereof, and that said indictment was returned by said grand jury to the circuit court of Dallas, in open court, as required by law. The court overruled

the prisoner's objection, and required him to stand his trial on the copy of said indictment set forth in said transcript; to which ruling and action of the court the prisoner excepted." The transcript from Dallas county, as copied into the bill of exceptions, shows that the indictment therein contained was endorsed by the foreman of the grand jury, "A true bill;" and that it was marked by the clerk, "Filed in open court, November 17, 1858;" but there is no minute entry of the fact that it was returned into court by the grand jury.

"Two physicians were introduced as witnesses on the part of the State, who testified, that they were sent for and visited the deceased, professionally, on the night of the 26th July, 1858, at the plantation of L. B. Vasser in Dallas county, who was the owner of the prisoner, and the employer of the deceased at the time of his death; that they found the deceased badly and dangerously wounded with a fresh gun-shot wound in the chest, and suffering intensely; that the deceased was advised of the danger of his situation, and said that he could not live; and that this was on the morning of the 27th July. Another witness also testified, that said Oaks, a short time after he was shot, and before said physicians came, declared that he could not live; and it was proved that he died during the forenoon of said 27th July. The State then offered in evidence the statements made by said Oaks, in reference to his being shot, which were—that on the night of the 26th July, about 9 o'clock, as he was returning from the residence of his employer, Major Vasser, (whose overseer he then was,) and as he turned a corner of the fence between said residence and the plantation which he was superintending, he was shot from the inside of the fence; that the gun, when it was fired, was not more than six feet from him; that his horse was alarmed, but he remained on him, and went towards the houses on the plantation as rapidly as he could; that there were two persons together when he was shot, as he heard two voices; that they pursued him some distance, and tried to head him, one being about twenty yards before the other; that he was not certain who it was that shot him; *that Mose*

*was the only slave on the place at enmity with him, and that he
was runaway.* These statements of the deceased being
offered in evidence as his dying declarations, the prisoner
objected severally to the following parts thereof, to-wit,"
(the italicized portions,) "on the ground that the same
did not relate to the circumstances of the death of the
deceased, and that they were illegal. The court overruled
each of said objections, and allowed said declarations to
be received in evidence; to which the prisoner excepted."

The jury returned a general verdict of guilty, and the
court thereupon pronounced sentence of death upon the
prisoner.

I. W. GARROTT, for the prisoner.—1. The court erred,
in requiring the prisoner to go to trial on the copy of the
indictment contained in the transcript from Dallas county.
Code, §§ 3535-36.; 5 How. (Miss.) 20, 32; 2 Hawk. 333;
1 Chitty's Crim. Law, 349, § 126.

2. The court erred, also, in admitting the dying declara-
tions of the deceased.—Johnson v. The State, 17 Ala. 618.

3. The verdict did not authorize the sentence of death.
Johnson v. The State, 17 Ala. 618; Cobia v. The State,
16 Ala. 781; Code, § 3312.

M. A. BALDWIN, Attorney-General, *contra.*—1. The
prisoner admitted the genuineness of the indictment as a
record, by pleading not guilty.—Clarkson v. The State,
3 Ala. 378. Moreover, the court is bound to presume,
on change of venue, that all the proceedings prior to the
change were regular, until the prisoner shows a fatal omis-
sion or irregularity.—State v. Williams, 3 Stew. 454;
State v. Matthews, 9 Porter, 370; State v. Greenwood,
5 Porter, 474; Russell v. The State, 33 Ala. 370. The
transcript shows, too, that the clerk marked the indict-
ment "filed in open court," which is equivalent to saying
that the grand jury returned it into court.

2. A general verdict of guilty, under an indictment
containing both good and bad counts, will be referred to
the good counts.—Shaw v. The State, 18 Ala. 547.

3. There was no error in admitting the dying declara-

tions of the deceased.—Oliver v. The State, 17 Ala. 595;
McLean v. The State, 16 Ala. 672; Moore v. The State,
12 Ala. 766; Nelson v. The State, 7 Humph. 542; Kirby
v. The State, 7 Yerger, 262; 1 Greenl. Ev. § 159; Roscoe's
Crim. Ev. 29; 2 Russell on Crimes, 761.

A. J. WALKER, C. J.—The point was made in the
court below, and is now pressed in this court, that the
defendant could not be subjected to trial upon the indict-
ment in this case, because there was no formal entry of
the fact that the grand jury returned the indictment into
court. The objection was, not that the indictment was
really never returned into court by the grand jury, but
that the fact of its return was not recited upon the minutes
of the court. The questions presented are, therefore,
simply whether the entry upon the minutes, of the bring-
ing of the indictment into court by the grand jury, is
necessary to constitute the indictment a legal accusation,
and whether such entry is the only legal evidence of the
return of the indictment.

Sir Wm. Blackstone defines an indictment to be, "a
written accusation of one or more persons, of a crime or
misdemeanor, preferred to, and presented upon oath by
a grand jury."—4 Blacks. Com. 302. And Lord Coke
says: "Indictment cometh of the French word enditer,
and signifieth in law an accusation found upon an inquest
of twelve or more upon their oath."—3 Coke upon Lit-
tleton, book III., chap. XIII, page 553. Our Code (§ 3497)
has defined an indictment as "an accusation in writing,
presented by the grand jury to the circuit court, charging
a person with an indictable offense." These definitions
show, that the entry, the necessity of which is asserted by
the prisoner, is not an element in the constitution of an
indictment. But we find farther, from Blackstone's Com-
mentaries, that if the grand jury are satisfied of the truth
of the accusation, they endorse upon it "a true bill," and
that "the indictment is then said to be found;" and that
"the indictment, when so found, is publicly delivered into
court."—4 Blacks. Com. 306. Farther, it was said in
King v. Ford, reported in Yelverton, (page 99,) that the

28

endorsement by the grand jury is the perfection of the indictment; that it touches it principally, and is the life of it. The inevitable deduction from these authorities is, that when a written accusation is properly endorsed, and returned by the grand jury into court, it becomes a valid indictment; and the obligation of the accused to answer it is not destroyed by the clerical omission of a recital upon the minutes, of the fact of the return.

There are decisions in Virginia, Tennessee and Illinois, which seem to stand opposed to our conclusion.—Commonwealth v. Cawood, 2 Virginia Cas. 527, 541, 547; State v. Muzingo, Meigs' R. 112; Brown v. State, 7 Humph. 155; Chappel v. State, 8 Yerger, 166; Rainey v. People, 3 Gilm. 71; McKinney v. People, 2 *ib.* 551. But with regard to these authorities it is to be observed, that in the Virginia case, there was a dissenting opinion by Judge Barbour, in which Judge Daniel concurred, maintaining the proposition which we have asserted with great force, if not conclusiveness of argument; and in Tennessee, (it appears from the case of Brown v. State,) there is a statute requiring indictments to be spread upon the minutes.

The same point arose in this court, in the case of The State v. Clarkson, 3 Ala. 378½; and the court then, without an examination of the authorities, disposed of it in the following language: " There always is, and necessarily must be, a period in the progress of every prosecution, when the indictment is *in fieri;* and we are not aware, that any entry made in it, or upon the minutes by the clerk, is necessary to give it effect as a record." This we regard as asserting, in effect, the same proposition which we have laid down. When the paper is properly returned into court, the defendant is legally charged; and while the entry upon the minutes, of the fact of the bringing in of the indictment, is eminently proper, as affording evidence that the accusation was legally made, it is not indispensable.

There is nothing in the Code militating against this conclusion. Section 3536 prohibits the entry of an indictment at the first term upon the minutes, unless the defendant is in custody, or on bail. This statute proceeds

upon the supposition, that an entry upon the minutes was the usual evidence of the presentment in court of an indictment. It presupposes that, and nothing more. It does not imply that such entry is a necessary ingredient of a legal indictment, when not dispensed with by law. The fact of the return of the indictment is shown, *prima facie*, by the endorsement of the foreman, and the endorsement of the clerk.—Code, § § 3499, 3535. Section 3499 requires that the indictment should be endorsed "a true bill;" and section 3535 requires that the clerk should endorse it filed; but there is no statutory requirement that an entry of the return into court should be put on the minutes.

[2.] One of the counts is conceded to be good. That the other is bad, cannot avail the defendant, for the general finding of guilty will be referred to the good count. State v. Lassley, 7 Porter, 226 ; State v. Jones, 5 Ala. 464; Shaw v. State, 18 Ala. 547 ; Farrer v. Ohio, 2 Ohio, (N. S.) 54 ; Stoughton v. Ohio, *ib.* 562.

[3.] The verdict of guilty is not defective for its omission to specify the degree of the offense. The decisions in Johnson v. State, 17 Ala., and Cobia v. State, 16 Ala., are made in reference to murder committed by a white person. The crime of murder by a slave is not divided into degrees.—Code, § § 3312–3314. Consequently, section 3082 of the Code, which requires that the jury, finding one guilty of murder, should specify whether the defendant is guilty of murder in the first or second degree, has no application to the indictment of a slave for murder.

[4.] Dying declarations are admissible in evidence only "when the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the dying declarations."—King v. Mead, 2 Barn. & Cr. 405; Johnson v. State, 17 Ala. 618; Oliver v. State, *ib.* 587. These declarations are admitted from the necessity of the case, to supply the want, which might otherwise exist, of evidence of the circumstances attending homicides committed in secret; and being admissible only so far as the necessity might extend, are restricted to "the circumstances immediately attending the act, and forming

a part of the *res gestæ.*"— State v. Shelton, 5. Jones' Law, (N. C.) 360; Nelson v. State, 7 Humph. 542. The declarations by the deceased, "that Mose was the only slave on the place who was at enmity with him, and "that Mose was runaway," do not fall within the principle upon which dying declarations are admitted, and the court, in admitting the former of those declarations, erred. The enmity of the slave towards the deceased, as previous threats, and previous attempts to commit the same act would have been, was evidence pointing in this case to the accused as the guilty agent, and was a fact altogether extrinsic of the circumstances attending the homicide.

It is not necessary that we should pass upon any of the other questions presented by the record, as it is not likely that they will again arise.

Judgment reversed, and cause remanded.