Collins vs. The State of Florida—Syllabus.

JAMES E. COLLINS, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Where facts are in issue under the pleadings, it is the exclusive province of the jury, under the statute regulating criminal proceedings in this State, to determine whether such facts are established by the testimony; therefore, in a prosecution for "receiving stolen goods, knowing the same to have been stolen," a charge of the court that "the place, the date, the value of the property, and the fact that a bale of cotton was stolen, have been fully established," is erroneous.

2. It should appear that the indictment was delivered into court by a grand jury. In case the Clerk omits to make a minute of the fact of the delivery of the indictment into court by the grand jury, the court may order it to be done at any time during the term. *Query:* Whether such a minute is essential, or whether the fact of delivery does not sufficiently appear by the endorsement of the foreman of the grand jury, the indictment itself, and the file mark of the Clerk?

3. The record contains the following: " The grand jury came into open court and made the following presentment: State of Florida vs. James E. Collins—Receiving stolen goods, knowing the same to have been stolen." The indictment properly endorsed follows this entry. The prisoner is arraigned, tried, and convicted. *Held:*

4. That it sufficiently appears from the record that the prisoner was tried in accordance with the Constitution " on presentment and indictment by a grand jury," and that the indictment was delivered into court by the grand jury.

5. The finding of a bill by the grand jury is shown by the endorsement of the foreman, to the effect that it is " a true bill." The endorsement is made under the law only " when so found " by the grand jury, and this act of the foreman being made by the statute the evidence that the bill was so found, courts cannot properly enlarge the statute or require evidence in addition to that prescribed by the statute, to show the finding of the grand jury.

6. The finding of the bill is not an act of the grand jury *in open court*, and it is not essential to the regularity of the proceedings in the court below that a special record entry or minute of the finding should be made in that court; nor is it essential that the extended record brought to this court by a writ of error should contain the finding endorsed on the bill. All that is required of the extended record which should be returned to this court with the writ of error is, that what that record contains shows, according to the accepted legal signification of the terms in which it is framed, that the grand jury presented to the court an indictment for the particular felony with which the party is charged.

James E. Collins, the defendant in the court below, was indicted in the Circuit Court for Alachua county for " receiving stolen goods, knowing the same to have been stolen." He was convicted and sentenced to imprisonment, at hard labor, for the term of three years. To this judgment he now prosecutes this writ of error. The points considered by the court are such as arise upon the record, which record is set out in the opinion of the court to the extent necessary to understand the questions determined.

*Finley* and *Finley* for Plaintiff in Error.

*A. R. Meek* (Attorney General,) for the State.

WESTCOTT, J., delivered the opinion of the court.

None of the evidence in this case is before the court. There is a large mass of testimony and other matter accompanying the record, which cannot be considered for the reason that it is not embraced in a bill of exceptions, properly attested by the judge of the Circuit Court.

The charge of the court, however, was properly excepted to, and the charge, as well as the exception, is certified by the judge in such manner as requires notice. Were it necessary for the court in this case to have the facts or any portion of them before it, to determine the point of law raised by the exception to the charge, we could not examine the question; but it is unnecessary that any of the facts should appear, as one of the instructions given could not have been proper under any state of facts, being plainly in conflict with the statutes of this State.

The judge charged the jury that "the place, the date, the value of the property, and the fact that a bale of cotton was stolen from the Florida Railroad Company, have been established fully." Sec. 8 of an act to provide writs of error in criminal cases, approved January 4, 1848, provides, "that charges made by judges to juries in all criminal cases shall be reduced to writing, and filed in the case, and shall be exclusively on points of law; and that any violation of this section shall be deemed and construed to be error, from which a writ of error may be prayed as of right."

The judge in this case charged the jury that certain facts were "fully established." These facts were in issue, and it was the exclusive province of the jury to determine whether they were "fully established" by the testimony. This was error, and the court should have granted the new trial moved for by the defendant. 3 Fla., 33.

The plaintiff in error being clearly entitled to a new trial upon this ground, it is unnecessary to consider the other errors assigned, which, if found to be well taken, would only entitle him to like relief.

There are other matters arising in this case, and which are brought to our attention in a proper manner, which should receive notice, as they arise anterior to the trial, and unless disposed of now, may occasion embarrassment.

It is made to appear that the plaintiff in error, before pleading to the indictment in the court below, offered to show by the testimony of the clerk that no record entry upon the minutes, as to the action of the grand jury in open court in reference to this indictment, was made by the clerk until several days after the discharge of the grand jury; that the court refused to hear evidence upon this subject, and that the defendant excepted to this ruling.

There is nothing erroneous in this action of the court. If it should be admitted that the fact that the grand jury make the presentment in open court should properly be entered by the clerk upon the minutes at the time the grand jury, in open court by their act, consummate and complete the accusation, it is not perceived how it is error, if being omitted at the time, the court directs it to be done afterwards during the term.

The court does not, by this act, add to or take from the acts of the grand jury—it does not thereby create or alter a finding or amend an indictment; it simply makes an entry upon the minutes of the court of a known fact in reference to the business and proceedings of the court, in the same manner as it would the entry of a verdict of the jury, by chance omitted in any particular case, or a judgment of the court upon a demurrer to pleas.

This question was considered in the case of the Commonwealth vs. Cawood, 2 Va. Cases, 527, where it was insisted by the State that the recording of the action of the grand jury in open court, in the matter of a presentment by indict-

ment, was a simple ministerial act of the clerk, and its omission could be supplied by an entry made *after the term,* in which the accusation was preferred. The court say, " a view of the decisions in this country and in England leads us to the conclusion, that during the term the records are in the breast of the court, and that amendments may be made in the proceedings of the court; but after the term has passed, no amendments can be made except mere clerical misprisions."

In 28 Ala., 11, the court directed the clerk, *after verdict in a capital case,* to make the entry upon the minutes, showing that the indictment had been presented by the grand jury in open court. Upon exception to this action of the court, and a writ of error from the Supreme Court, the Supreme Court affirm the judgment and remark that " where the trial and conviction occur at the term at which the indictment was found, the court may, at any time during that term, as well after as before the conviction, cause its clerk to endorse on the indictment *'filed,'* and to date such endorsement according to the fact, and to sign it; and may also cause an entry to be made on the minutes that the indictment was returned into court by the grand jury, and the day on which it was so returned into court. Over such matters the court has control during the term, and may alter, amend, or set them aside as justice may require."

The principle is amply illustrated by numerous cases in England and the United States. 1 Saunders, 250; 6 East, 328; 1 M. & S., 442; 1 Salk., 47; 2 Burr., 1,099; Chitty's Crim. Law, 752; 9 Fla., 541; 3 Iowa, 252; 16 Ala., 421; 2 Cush., 115-23-7; 7 Md., 442; 2 Va. Cases, 89, 111; 7 Eng., 62; 4 Cal., 238; 13 Mass., 455; 28 Ga., 236; 8 Mich., 70; 17 Texas, 237; Bish. Crim. Proc., 906-7. What was done in this case was done during the term, and the power of the court to this extent cannot be questioned, even as to judicial acts as distinct from ministerial. In England, where the indictment is sometimes removed to the Court of Queen's

Bench, although found in an inferior court, this matter was contained in the caption of the indictment, which sets forth the judicial history of the cause to the time of finding the indictment. See the doctrine of amendments of the caption in England discussed in 1 Saunders, 249–50; 1 Chitty's Crim. Law, 327; Bish. Crim. Proc., 150.

We do not hesitate to say that the intimation in the case of Holton vs. The State, 2 Fla., 504, to the effect that it may well be doubted whether such an entry can be made during the same term after judgment, is entirely unsustained by any authority. It can be done after as well as before judgment, and there is no authority for the distinction there intimated. On the contrary, there is one case in the United States going so far as to direct the court below, after the term has passed, to make its record show by a *nunc pro tunc* entry the fact of presentment in open court. 19 Ark., 189.

The other questions to be considered in this case arise thus. The entry before mentioned as authorized to be made upon the minutes by the court, after the discharge of the grand jury, was (after stating the date and the convening of the court) as follows:

· " The grand jury came into open court and made the following presentments, viz: State of Florida vs. James E. Collins—receiving stolen goods, knowing the same to have been stolen."

After verdict of guilty, the defendant moved in arrest of judgment, on the ground that there was no legal *record of the finding* of the grand jury, and that there was no sufficient record evidence of the fact that this indictment found against him had been presented or preferred against him by twelve of the grand jury in open court. His motion is overruled, exception is taken, and this action of the court is here assigned as error.

There is no objection urged here, either as to the body of or the endorsements upon the indictment. The bill, in full compliance with the statute, is endorsed thus: "A true bill,"

Geo. Savage, Foreman," and is signed by the State Attorney as the statute requires.

The first case in the United States upon the subject of "record evidence," of the finding and of the fact that the grand jury have in open court accused the prisoner of the crime charged, is the case of the Commonwealth vs. Cawood, 2 Va. Cases, 527. This case has been followed in some respects in Tennessee, Illinois, Iowa, Arkansas, Mississippi and Indiana. 8 Yerg., 170; 7 Hamp., 155; 20 Ill., 430; 3 Scam., 85; 3 Gilman, 71; 3. Greene, 252; 24 Ark., 350; 19 ib., 188; 30 Miss., 403; 11 Ind., 304. There are other cases upon the same subject, which may well be considered. 20 Ind., 281; 21 ib., 79; 50 Penn. State, 9; 24 Ind., 142; 35 Ala., 421; 36 ib., 236; 27 Cal., 65; 2 Kan., 174; 1 ib., 313; 44 Penn., 131; 10 Iowa, 126.

It was decided in Virginia by a divided court, that an omission to *record the finding* was not cured by the regular arraignment of the prisoner, by his pleading not guilty, by spreading upon the record the "paper purporting to be an indictment," endorsed a true bill by the person who was foreman of the grand jury at that term, and by the recital in the record that he "stands indicted." All of these several matters combined appeared in that case from the record, and they were held insufficient evidence of the finding. In the case referred to, the prisoner moved that he be discharged before there was a verdict, and the court intimate that there would have been a difference after verdict.

The courts of the other States are not so particular to mention what the court in Virginia calls *the record of the finding* of the grand jury. They state the law thus:

" The record should always show that the indictment had been returned into court by the grand jury." 13 Ark., 720; 19 ib., 178.

"An indictment found should be presented in open court by the grand jury, and the fact should be certified of record." 3 Iowa, 249.

" The record ought to show affirmatively the returning of the indictment into court by the grand jury." 3 Gilman, 71.

The court in Chappel vs. The State, 8 Yerg., 171, remark, that " in the record before the court a bill of indictment is found endorsed 'a true bill,' and this endorsement is signed by the foreman of the grand jury, but no evidence or entry appears of record showing that the indictment was returned into court by the grand jury."

Blackstone, (4 Com., 306,) in describing the proceeding, says when the indictment is found, it " is publicly delivered into court," but what he says is simply by way of narrating the manner of proceeding, as he no where uses such language as would indicate a necessity for a special entry of the finding upon the extended record.

It is apparent that there can be sufficient evidence that an indictment has been thus publicly returned without necessarily making a *special record* entry of the finding.

There is a difference between the views of the court in Virginia and the views of the courts in the other States. The court in Virginia holds that there must be a "record of the finding " of the indictment. The other courts state the rule to be, that there should be evidence in the record establishing the fact that the indictment was presented in open court by the grand jury, some of them going so far as to require an affirmative entry of the fact. There is a difference in the requirements. What is meant by the " finding of a grand jury ?" The practice in England in this matter is as follows :

When there is any complaint charging a party with a criminal offence, it is required that the prosecutor, (who is not the officer of the crown but a private person,) shall set forth and describe the crime in a bill engrossed on parchment. The grand jury, after having been duly sworn, charged and empowered to act, then hear the evidence adduced by the prosecutors in support of their respective bills. If from the evidence thus adduced they are thoroughly persuaded of the

truth of the bill so far as their evidence goes, they endorse on the back of the bill " a true bill," if not, they endorse it " not a true bill." 4 Black., 303, 5 ; 11 Cush., 475 ; 13 N. II. 489.

The endorsement " a true bill," is what is called by the court in Virginia the " finding," and in reference to which it is said, " after a grand jury has found a bill and reported it *and their finding is placed on the record*, the indictment so found and endorsed becomes as much a part of the record as if it was spread in extenso on the order book, but in order to give it that character *we deem it essential that a record should be made of the finding in the order book*. The difference in the requirement is thus manifest."

This decision in Virginia, not sustained by the other American cases, so far as the necessity for *a special entry of the finding as distinct from record evidence of the fact that the indictment was delivered in open court by the grand jury* is concerned, is urged in support of the propositions made by the plaintiff in error to the effect, first, that such a distinct entry of the finding upon the order book is necessary ; and second, that the entry that has been made in this case (omitting the words a true bill,) is not sufficient evidence of the finding, and hence insufficient to justify the arraignment of the prisoner. In addition to which, it is understood by the court that it is insisted by the plaintiff in error that the entry here made is not sufficient evidence of an accusation against the defendant for the particular crime by the grand jury in open court.

We are of opinion that there is no necessity for the insertion upon the record of a special entry stating the finding of the grand jury, and that it is sufficient if upon the record there is enough to show a delivery of the indictment into court by the grand jury.

What is the reasoning of the court in Virginia upon which this conclusion as to the necessity for a special entry of the finding upon the order book is based ? That court says we

consider this entry to be essential, because from the year 1776 to this period, (1826,) it has been the uniform practice of the general court and of the circuit court to record the findings of the grand jury as part of the proceedings of the court, and because the statute requires that the proceedings of the court should be regularly placed on the order book. It is conceded that in this State the like practice has prevailed, but it is not correct to say that every act of the grand jury must become a matter of record by way of special entry.

We are not prepared to say that because it may be the practice of the circuit court to add to such an entry as we have in this case the words " a true bill," that such an addition is essential. Because that practice may be to do more than the law requires, cannot enlarge the law. This court has prescribed no such rule ; no statute has prescribed it ; and it is nothing more than a customary entry. Nor do we see that an entry of the finding upon the minutes or upon any particular order book is the record of an act of the grand jury in open court, should it be admitted that all their acts in open court must be made a matter of record. We know of no authority in England or the United States which requires this act of finding to be done in open court. It is usually done in the grand jury room, where, after a vote, the foreman, acting for the requisite number to find a bill, so endorses it. The statute makes it his duty to make this endorsement when the grand jury agree to it, and the endorsement should be accepted as evidence of that fact, unless in the face of the statute prescribing what that endorsement shall show, you are to presume fraud and improper conduct upon the part of an officer and require positive evidence to rebut such created presumption. The reasons given in the case in Virginia for the necessity of a special entry of the finding are not only unsatisfactory, but the conclusion of the court in this respect is unsustained by any well considered case in the United States, by any decision in England, or by the

Collins vs. The State of Florida—Opinion of Court.

practice in making up the record there.  A form of a record of an indictment and conviction for murder at the assizes in England is found in the appendix to the 4th volume of Blackstone, and it will be seen by reference to this extended record that the finding is not found in the record.  The record brought by a writ or error to the Queen's Bench has no such thing in it. 3 Lord Raymond, 33.  It cannot be doubted that such an endorsement by the foreman of the grand jury must appear upon the bill in the court below to justify the arraignment, as the statute, which is not simply directory, requires that "all indictments (by which is meant bills,) shall be endorsed on the back by the foreman of the grand jury when so found, 'a true bill' and signed by him."  Towle vs. The State, 3 Fla., 202 ; 13 S.' & M., 259 ; 3 How., 433 ; 19 Miss., 226 ; 3 Dana, 474 ; 2 Bibb, 210 ; 10 B. Mon., 125.
.  But we know of no rule of law which requires that an extended record, which should be made up by reference to the docket entries and to these endorsements and like things, must contain all of these endorsements, or in this case the endorsement of the finding.  All that is required of the extended record is, that what that record contains, shows, according to the accepted legal signification of the terms in which it is framed, that the grand jury presented to the court an indictment for the particular felony with which the party is charged.

Mr. Bishop in his work on Criminal Procedure, speaking of this matter of endorsements and docket entries, as distinguished from the extended record, says :  "When an indictment is found by the grand jury, the foreman writes upon it words ' a true bill,' and signs it with his name as foreman. Now, there are plainly certain stages of the proceeding in which this endorsement upon the indictment is more or less material, yet in the record as finally made up and extended, this endorsement, according to the form given us by Blackstone, does not appear.  The simple statement that ' it is presented' so and so, covers all such things."

662 SUPREME COURT.

Collins vs. The State of Florida—Opinion of Court.

Pearson, J., in the State vs. Guilford, 4 Jones, N. C., 83, 85, says, "it is not necessary that the record should set out the manner in which a bill of indictment was presented, or the evidence and memoranda and entries from which the record was made up. It is sufficient and most proper that the record should only set out the fact that it was presented by the grand jury," and it is there held that it is not necessary to copy into the reord the entry of "a true bill," usual on the back of an indictment. In 2 Blackford, 153, the court remarks in reference to this endorsement on the bill, that a complete record, conclusive as to every material fact in the case, may be made up without it.

Having determined that a special entry in the record of the finding endorsed on the back of the indictment is not essential, it only remains to determine in this case whether it appeared from the entry made in the court below, and which entry now appears in the transcript of the extended record brought to this court by the writ of error, that the defendant was tried in accordance with the requirements of the Constitution, "on presentment and indictment by a grand jury." Sec. 8, Dec. of Rights, page 2 of Con. The language of the St. Joseph's Constitution under which the practice in this State arose was, "no person shall be put to answer any criminal charge but by presentment, indictment or impeachment," and the difference is that under the old Constitution the party might have been tried upon the presentment alone, while under the new Constitution there must be *presentment and indictment.*

The practice of trial upon presentment alone is illustrated in many cases. 13 East, 258; 9 Yerg., 359; 23 Ga., 580; Va. cases, 18, 19, 161; 5 Leigh 743; 1 Swann, 22; 2 Bay, 209; 7 Gratt., 637; 1 Kelly, 245.

Does this record disclose that the requirement of the Constitution has been complied with? Was the defendant tried upon presentment and indictment by a grand jury? The entry in the record is, "the grand jury came into open court

and made the following presentment," viz : " State of Flor-
ida vs. James E. Collins—receiving stolen goods, knowing
the same to have been stolen."

The indictment properly endorsed " a true bill," and
signed by the State Attorney necessarily follows this entry
in the record in the court below.   There is really no neces-
sity for all of these entries to appear, as before remarked, in
the extended record, but when they do appear as in this
case and nothing else appears, we must give them a construc-
tion.   It is evident from this entry that the grand jury came
into open court and took some action in reference to a crime
known to the laws of this State, to-wit : receiving stolen
goods knowing the same to have been stolen—that this ac-
tion concerned the State of Florida as plaintiff, and James
E. Collins as defendant.   The record describes their action
in reference to these subjects as a presentment.   What then
does this term imply ?   Does it or does it not necessarily
mean in the connection in which it stands, an accusation ?
Is it consistent with its known meaning to infer that there
was no accusation ?   If it does necessarily mean an accu-
sation in the connection in which it stands and an indict-
ment follows, spread out in extenso upon the record,
then the necessary result of the evidence afforded by this
record is that a grand jury came into into open court and
presented an indictment against James E. Collins for the
crime stated.

. Presentment, in its limited sense, is a statement by the
grand jury of an offence from their own knowledge, with-
out any bill of indictment laid before them, setting forth
the name of the party, place of abode, and the offence com-
mitted, informally, upon which the officer of the court af-
terwards frames an indictment.   In Style's Prac. Reg'r, 267,
it is said " a presentment may be in English, but an indict-
ment ought to be in Latin or it would be quashed," and the
difference between a presentment in this limited sense and
an indictment is thus stated : " An indictment is drawn up

at large in Latin and brought engrossed to the grand jury to find; a presentment is a short note drawn up in English by the jury for instructions to draw the indictment by." Style's Prac. Reg'r, 510.

We have in our practice no such presentment, (although it is not prohibited by the Constitution,) nor do we have what is technically known as a bill of indictment by a private prosecutor, as in England. The State Attorney prepares here the bill. Presentment, generally taken, includes not only presentments in the form just stated, but indictments by a grand jury, (Tom. Law Dic., title, Presentment, Bac. Abrdg't, title, Ind.,) and in our practice except when it refers to what is called a general presentment, is used alone in that sense in which it is applicable to an indictment found by a grand jury. The term *ex vi termini* imports an accusation. Lord Coke says, (2 Inst., 739,) every indictment is a presentment, and it is clear that a presentment can be made by way of indictment, hence in this case the record affords evidence, first, that there was a presentment made in open court by the grand jury against the defendant for the offence charged; second, that that presentment was made by preferring an indictment against the defendant, and hence the record discloses that the prisoner was not held to answer the charge except after presentment and indictment within the meaning of the constitution.

We might, with all propriety, drop this case here, but we deem a contrast between the practice in England and some of the States, in this particular matter of a record of the acts of the grand jury, not inappropriate.

The records, as they are brought to this court, show a want of information upon the matter of the general structure and requisites of an extended record in both civil and criminal cases, which is not at all creditable.

Everything that we have of practice, and in fact our entire judicial structure in this country, is framed with strict reference to the common law of England; and looking to

Collins vs. The State of Florida—Opinion of Court.

the practice in the Court of Queen's Bench, we see no sanction for the rulings in this country to the effect that nothing but a distinct and particular entry of the precise fact, upon the record as sent to this court, can be accepted as evidence of the delivery of the indictment in court by the grand jury. The history of criminal practice in England discloses that the courts there have been, in many respects, more willing to attach importance to objections to the form of the indictment and like matters than the courts of the United States. This arises from the fact that our practice has grown up in a more advanced civilization. Our laws are less severe, and there is a wider discretion left in the matter of punishment. The great strictness in England is to be attributed principally to the fact that in early English history " the most trivial offence was punishable with death, and it was almost a foregone conclusion, if the sword of justice was once drawn, that it would be returned to its scabbard bathed in blood." Under this state of things it was but natural that kind and merciful judges, presiding in courts of criminal jurisdiction in England, should have attached great importance to matters which really appear often insignificant. We have had no like cause to produce a like effect in this country. Here the absence of such a state of things has led courts generally to a somewhat different practice, and in this country, as Bacon says of England, " in later years exceptions of this kind have not been much favored, especially if the indictment were in a superior court, and that which is omitted be in common understanding implied in what is expressed." Bacon Abr. Indictment, I.

Contrary to this view, however, in this matter of record of an indictment, brought to an appellate court by a writ of error, some of our courts in reference to the subject now under consideration appear to have gone beyond the requirements of the practice in the analogous case of a record of an indictment brought for trial to the Queen's Bench by a cer-
43

tiorari issuing therefrom to the inferior court in which the indictment is found, or to the practice in the precisely similar case of a record of an indictment brought up for review by writ of error issuing from the Queen's Bench after judgment in the inferior court.

In the case of the Queen vs. Smith, reported in 2 Lord Raymond, 1,144, and the record of which is set forth in 3 Lord Raymond, 33, we have the record as it appears in the court of Queen's Bench, and to illustrate the subject being considered, and to inform the parties bringing such records here, it is inserted to the words of the indictment.

In the record as it appears in the Queen's Bench, is first, the writ of error and the return of the inferior court upon the writ, which it 'is unnecessary to insert here. Then follows the record thus :

"Middlesex, (to-wit :) Be it remembered that at the general quarter sessions of the peace of the lady the Queen, holden for the county of Middlesex, at Hick's Hall, in St. Johns St., in the county aforesaid, on Friday in the next week after the feast of the Epiphany, to-wit : the twelfth day of January, in the third year of the reign of our lady Anne, by the peace of God, &c., before James Mundy, Sergeant-at-Law, Ralf Bucknell and others, justices of the said lady the Queen, assigned to keep the peace in the county aforesaid, and also to hear and determine divers felonies, trespasses and other misdemeanors committed in the same county, by the oath of William Rathbone, George Bishop, Lawrence Cross, William Smith, Peter Sparks, Robert Bedning, William Smart, Edward Hicks, Anthony Freer, John Farren, John Sutton, Nicholas Meeter, Edward Davenport, Richard Hale, Jeremiah Mason, Thomas Derry, Thomas Ward, Peter Sharp, Moses Wilkinson, Robert Pitts, Naham Cropley and Thomas Beauman, honest and lawful men of the county aforesaid, then and there sworn and charged to enquire for the said lady the Queen, for the body of the county aforesaid, it is presented that Dorothy Smith, late of

the county of," and so on, inserting the words of the indict-ment.

Making the necessary changes in this to correspond with the different state of facts, &c, we have a simple form embracing everything essential, instead of the insertion of all kinds of docket entries and memoranda which usually accompany the records brought here. It is thus seen that the record brought up by writ of error as it appears in the court of Queen's Bench, has no special distinct entry of the finding, nor does it have a distinct entry of the fact that a grand jury in open court delivered the bill. These matters are covered by the simple statement that by the oath, &c., of certain persons, (naming them,) it is " presented."

As to the practice when the record is removed by certio-rari for trial. The indictment as it stands upon the file of the inferior court in England commences : " The jurors for our lady the Queen on their oaths present." When a certiorari issues to remove the record, and a return is made, a schedule is prepared by the clerk and annexed to the indictment, and both are sent to the crown office. This schedule describes the court before which the indictment was found, the jurors, (giving their names,) by whom found, and the time and place where found. This schedule is not *a paper put on the files of the inferior court in each case*, but *it is made up in each case only* on the removal upon certiorari. When the indictment with the schedule reaches the Queen's Bench, then the *clerks of that court* from the schedule make up the caption of the indictment and affix it. 1 Stark. Crim. Pld'g, 233 ; Dick. Qr. Sess., 931 ; Bish. Crim. Proc., 145 and 6. The form of the caption thus annexed is as follows :

" Norfolk—At a general sessions of the peace holden at ————, in the county aforesaid, on the —— day of —— in the —— year of the reign, &c., before A., B., C., D., and their fellow justices of our said lord the King, assigned to keep the peace of our said lord the King, and also to hear and determine divers felonies, trespasses and other misdemean-

ors in the same county committed, by the oath of G., H., E., F., good and lawful men of the said county, sworn and charged to enquire for our said lord the King, and the body of the said county, it is presented," &c. Bish. Crim. Proc., § 149 ; 2 Hale, P. C., 165 ; 1 Chitty Crim. Law., 327.

The record of the lower court does not in the English practice contain a separate caption for each case, but there is one general caption for the term. Bish. C. P., 148 ; C. A. & E., 236, 249. It is thus seen how the indictment stands in the inferior court in England. What is called the caption, (and that is " the part of the record which comprehends the judicial history of the cause to the time of the finding of the indictment,") is made up by the clerk of the superior court from a schedule sent up attached to the indictment by the clerk of the inferior court, which particular schedule is no part of the files of the case in the court below, but it is prepared by the clerk from the general caption of the term. While this is the practice in England, in many of the States some greater evidence of the delivery of the indictment in court is required. Usually the courts require an express affirmative entry of this particular fact, while all that is required in England is the simple recital that by the oath of certain named persons sworn to enquire, &c., it is presented, &c.

These decisions seem to be based upon the presumption that the foreman of the grand jury does not discharge his duty, and that the officers of court contrary to law will receive and file indictments not delivered by the grand jury. In some of the States, a presumption that the foreman of the grand jury will not make such an endorsement except when so authorized by the requisite number of his fellows, and that the clerk of the court will not receive an indictment except from those authorized to prefer it, is permitted to operate, and the defendant is required to take affirmative action in the shape of a motion setting up the contrary to be

the truth before the court will listen to him.    37 N. Y., 123.; 35 Ala., 321 ; 36 Ala., 236.

In the case in New York there was nothing more than the simple commencement of the indictment without even a caption, and the court say, " it is true that it does not allege that it was found by a grand jury, or by the legal number of grand jurors, but these are plainly implied, because that body legally constituted alone have the power to present any one for trial.   Should an indictment be found in an improper manner, or by an insufficient number of jurors, the way is open for redress by motion, which secures to the accused party immunity from an illegal trial or punishment." 15 Mass., 207, 8 : Reg. vs. Hearne ; 9 Cox, C. C., 433, 6.; 10 Jurist N. S., 724 ; 32 Blackstone, 238 ; Bishop's C. P., 448.

In the case of Mose, a Slave, vs. The State, decided by the Supreme Court of Alabama so late as 1860, Walker, C. J., says :

" The point was made in the court below and is now pressed in this court that the defendant could not be subjected to trial upon the indictment in this case, because there was no formal entry of the fact that the grand jury returned the indictment into court.   The objection was not that the indictment was really never returned into court by the grand jury, but that the fact of its return was not recited upon the minutes of the court.   The question, presented are therefore simply whether the entry upon the minutes of the bringing of the indictment into court by the grand jury is necessary to constitute the indictment a legal accusation, and whether such entry is the only legal evidence of the return of the indictment."

The court, after giving the reasons for their conclusion, state it thus : " The inevitable deduction from these authorities is that when a written accusation is properly endorsed and returned by the grand jury into open court, it becomes a valid indictment and the obligation of the accused to answer is not destroyed by the clerical omission of a recital

upon the minutes of the fact of the return." 35 Ala., 427.

The judgment of the court below is reversed and a new trial is awarded.