[Walker v. State.]

# Walker v. The State.

## Indictment for Murder.

1. *"Served," "serving;" meaning of.* — The legal effect of the words *"served,"* *"serving,"* when used in a sheriff's return or minute-entry in reference to a copy of the indictment and list of jurors, is that such copy and list were *"delivered"* to the defendant as required by § 4171 R. C.

2. *Dying declarations; admissibility of.* — Dying declarations are inadmissible, unless made under a sense of impending dissolution, and concerning the circumstances immediately attending the acts occasioning the declarant's death and forming a part of the *res gestæ.*

3. *Same; case in point.* — Deceased was badly shot, and in reply to efforts by his physicians to encourage and buoy him up, said he " was mortally wounded, and knew he would die, and requested a minister to be sent for," which was done. On being questioned as to the circumstances of the difficulty, he replied, " I am suffering a good deal now. I will tell you more about it after a while." After this, but how long is not shown, the deceased made declarations which the court admitted against defendant's objection. *Held,* that the State should have shown how long it was after the encouragement was given before the declarations were made, and what the deceased's opinion then was as to his condition.

4. *Confessions.* — Statements made by the prisoner, at his own house, in response to a question " how he came to shoot the deceased," and not induced by any threats, duress, or promises, are admissible evidence against him.

5. *Venue; proof of, should be shown by bill of exceptions.* — Comments of the court on the necessity of bills of exceptions professing to set out *all* the evidence containing the testimony in respect to *venue.*

APPEAL from Russell Circuit Court.
Tried before Hon. JAMES E. COBB.
The facts are stated in the opinion.

GEORGE W. GUNN and JOS. B. MCDONALD, for appellant.

J. W. A. SANFORD, Attorney General, *contra.*

MANNING, J. — The appellee was indicted for, and convicted of, murder in the first degree, and sentenced to be hanged. Many exceptions are taken to the proceedings in the court below, a portion of which are predicated upon matters set forth in a voluminous bill of exceptions. It will be necessary to mention only a few of the errors assigned and propositions discussed.

The appellee was a prisoner confined in jail, and was entitled to have delivered to him, one entire day before the trial, a copy of the indictment, and a list of the names of the persons summoned (seventy-five in number including the regular panel), from which jurors to try him were to be drawn (§ 4171 of the Revised Code). An order was made by the court requiring this to be done. The day of his trial was the 17th of November, 1874. A list of the seventy-five persons summoned, including the regular jurors of the week, is set out in the

[Walker *v.* State.]

record, followed by this return, "Executed by serving copy of the within and copy of indictment on Seaborn Walker, November 15, 1874.    J. S. Burch, Sheriff."    In the judgment-entry is a recital that "the prisoner having been served with a copy of the indictment and a list of the jurors summoned for his trial one entire day previous to the trial," &c.

To this it is objected that the Rev. Code requires that a copy of the indictment and list of persons summoned " must be *delivered* to " the prisoner; and that it does not appear from the sheriff's return, or the entry of the court, that this was done. The words to *serve* and *service,* have a distinct and well understood meaning in legal practice. " *Service* " is defined in Burrill's Law Dictionary as " the judicial delivery or communication of papers; execution of process. The delivery or communication of a pleading, notice, or other paper in a suit, to the opposite party, so as to charge him with the receipt of it, and subject him to its legal effect."    See also Tidd's Prac. 164 *et seq.*    The objection, therefore, is not well taken.

Exception was taken to the admission in evidence, as dying declarations, of certain statements made by the person slain, on the day he received the mortal wounds.    The law on this subject is well settled.

As such declarations are generally made in the absence of the person to be affected by them, without opportunity for cross-examination, and not under oath, they are not admissible against the accused " unless it appear to the court that they were made under a sense of impending dissolution, and a consciousness of the awful occasion; though the principle is not affected by the fact that death did not ensue until a considerable time after the declarations were made."    " When every hope of this world is gone, when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth, a situation so solemn and awful is considered by the law as creating the most solemn of sanctions."    1 Wharton's Amer. Crim. Law (6th ed.) §§ 669, 671, and cases there cited.

But even then, such declarations are admissible in evidence only " when the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the dying declarations."    *Mose* v. *The State,* 35 Ala. 421; *King* v. *Mead,* 2 Barn. & Cr. 405.    They are restricted to "the circumstances immediately attending the act and forming a part of the *res gestœ.*"    *Mose* v. *The State, supra*; *State* v. *Shelton,* 5 Jones Law (N. C.) 360; *Nelson* v. *The State,* 7 Humph. 542.

In the cause before us the witnesses to the dying declarations of Halliday, the deceased, were physicians, and " endeav-

[Walker v. State.]

ored to encourage him and buoy him up by referring to men being wounded in battle, apparently much worse," &c. Although they believed he would die, they did not let him know that they thought he would. In response to their encouragements, he said, he knew he would die and requested that they would send for a minister; which was done. And to their questions about "the circumstances of the difficulty," he replied: "I am suffering a good deal now. I will talk to you more about it, after a while."

This indicates that he expected to get better. It is not improbable that he began to hope from their encouragement that he might recover. It was after this, that the statements received as his dying declarations were made; but how long afterwards does not appear. Nor does it appear what was his own opinion of his condition at the time when they were made. It was in the power of the State to have the testimony clearer and more definite on these points; and until it was made so, the declarations ought not to have been received in evidence.

There was error also in admitting, against the objection of the prisoner, that portion of the declarations of deceased in which he said, "that he had a difficulty with prisoner the previous day in the field of Abraham Halliday." This does not come within the rule above referred to, restricting the dying declarations, that are to be received as evidence against the accused, to the circumstances immediately attending the act of killing, or mortally wounding, and forming a part of the *res gestæ*. It was rather narrative of a past transaction.

The confessions of prisoner were properly received as evidence when offered by the State. It was proved that they were made at his own house, not under the influence of any threats or promises, but freely and voluntarily.

The other matters assigned as errors here, will not probably come up again in the court below; and we do not, therefore, now consider them. We remark, however, that it is surprising that so many criminal cases are brought up with bills of exception purporting to set out all the evidence therein, in which nothing is said about the proof of the *venue*. Inasmuch as the *county in which the offence was committed* must be proved in every criminal prosecution, in order to enable the court to pass judgment, the attorneys for the state, and the judges in the courts below, ought to be particular that bills of exception, professing to set out all the evidence, shall contain the testimony in respect to the *venue*.

The judgment is reversed and the cause remanded. The prisoner will be kept in custody until discharged by due course of law.