# JAMES D. GREEN *v.* THE STATE OF ALABAMA.

*( Supreme Court of Alabama—December Term, 1880.)*

1. The crime of murder consists in the infliction of a fatal wound, coupled with the requisite contemporaneous intent or design which renders it felonious; the subsequent death of the injured party is a *result* or *sequence* rather than a constituent elemental part of the crime.

2. Green, the defendant, being under indictment, was convicted of the murder of Ephraim Thompson, and sentenced to the penitentiary for life. The evidence showed that the act of shooting which caused the death took place in Colbert county, Alabama, where the indictment was found and the trial occurred; Thompson died within a year and a day in the State of Georgia: *Held*, That the crime charged against the prisoner was ( irrespective of the statute ) one against the peace and dignity of the State of Alabama, and properly within the jurisdiction of the Courts of this Commonwealth.

### Opinion by SOMERVILLE, J.

The principal question involved in this case is that of sovereign jurisdiction in the matter of homicide, where the fatal shot or blow occurs in one State, and death ensues in another. The defendant Green, being under indictment, was convicted of the murder of Ephraim Thompson, and sentenced to the penitentiary for life. The evidence shows that the act of shooting, which caused the death, took place in Colbert county, Alabama, where the indictment was found and the trial occurred. Thompson died within a year and a day, in the State of Georgia.

It was formerly doubted, at common law, where a blow inflicted in one county, and death by reason of the injury ensued in another, whether the offense could be prosecuted in either county. ( 1 East's P. C., 361; 1 Hale's P. C., 426.) The better opinion seems to have been, however, that the jurisdiction attached in the venue where the blow was inflicted. (*Ib.*) This difficulty, as noted by Mr. Starkie, was sought to be avoided by the legal device of carrying the dead body back into the county where the blow was struck; "and the jury might there," he adds, "inquire both of the stroke and death." ( 1 Stark. Cr. Pl., 2nd Ed., 3–4, note.) It was to quiet doubts, and obviate this difficulty, that the statutes of 2nd and 3d Edw. VI, Ch. 24, and the later one of 2d Geo. II, Ch. 21, were enacted by the British Parliament. The example has been followed by some fourteen or fifteen States of the American Union, and by our own among others. These statutes, though

different in phraseology, are similar in substance and purpose. Their manifest design seems to be, to prevent a defeat of justice in administering the law of felonious homicide and other crimes, by rendering the jurisdiction certain.

The statute of Alabama referred to reads as follows:

"When the commission of an offense commenced here, is consummated without the boundaries of this State, the offender is liable to punishment therefor, and the jurisdiction in such case, unless otherwise provided by law, is in the county where the offense was commenced." Code, Sec. 4636.

But we need not rest the decision of this question on this particular construction of the statute. Our view is, that the crime of murder consists in the infliction of a fatal wound, coupled with the requisite contemporaneous intent, or design, which legally renders it felonious. The subsequent death of the injured party is a result, or sequence, rather than a constituent elemental part of the crime. This principle, we think, is correct, at least so far as affects the question of jurisdiction. As asserted by Patterson, J., in *Rex* v. *Hargrove*, 5 Car. & P., 170, "the giving of the blow which caused the death constitutes the felony."

In *Riley* v. *The State*, 9 Humph., 646, this question was learnedly discussed by the Supreme Court of Tennessee. It was there held, that the offense was committed at the place of the blow, though the death occurred elsewhere. The Tennessee statute required all criminal cases to be tried "in the county in which the offense may have been committed." Green, J., said: "That [the blow] alone is the act of the party. He commits this act, and the death is only a consequence. Therefore, when the Legislature enacts that the party shall be tried in the county where the offense may have been committed, they intended where the active agency of the perpetrator was employed."

In the case of *The State* v. *Carter*, 3 Dutcher, 499, it was held by the Supreme Court of New Jersey that an indictment, charging a felonious assault and battery in New York, and that the injured party came into the State of New Jersey, and there died from its effects, charged no crime against the latter State, but rather, it would seem, against the former.

The Supreme Court of California, in the case *People* v. *Gill*, 6 Cal., 632, decided that the crime of murder is committed at the place where the fatal blow is struck. There, the statute had

been changed between the time of the offense and the death of the victim; and it provided that, upon trials for crimes committed previous to the new enactment, the offender should be tried and punished under the law in force at the time of the commission of the crime.

These views are in harmony with the conclusions reached by the most approved text writers on criminal jurisprudence.    1 Bishop's Crim. Law, Sec. 112–16.

We conclude, then, that the crime charged against the prisoner was, irrespective of the statute, one against the peace and dignity of the State of Alabama, and properly within the jurisdiction of the Courts of this Commonwealth.

---

## PEOPLE *v.* GOSS AND PHILLIPS MANUFACTURING COMPANY.

*(Supreme Court of Illinois, June 20, 1881.)*

1. EXECUTION—LEVY ON STOCK—SECRETARY—"CLERK." The secretary of a corporation is a "clerk," within the meaning of a statute which directs that an execution shall be left with a "clerk" of a corporation to effect a levy upon the share of a judgment debtor.
2. IBID.—ATTEST—BY SHERIFF. The attestation of an execution may be made by the sheriff.

Appeal from the judgment of the appellate Court for the first district, whereby a judgment of the Superior Court of Cook county was affirmed, denying a petition of Adams for a writ of mandamus, to compel the corporation to transfer to him upon its books certain shares of stock standing in the name of Church, and to issue new certificates for the same to Adams. The statute declares: "The share or interest of a stockholder in any corporation may be taken on execution, and sold as hereinafter provided." (Sec. 52, Chap. 77, Rev. Stat, 1874, p. 628.) By Sec. 53 it is said: "The officer shall leave an attested copy of the execution with the clerk, treasurer, or cashier of the company, or, where there is no such officer, with any officer having the custody of the books and papers of the corporation, and the property shall be considered as seized on execution when the copy is so left, and shall be sold in like manner as goods and chattels." It is provided by Sec. 55, that "the officer of the company who keeps a record or account of the shares" of the stockholders