# Blackburn *v.* The State.

*Indictment for Murder.*

1. *Dying declarations.*—When a person, who has been shot and greatly prostrated by the shock, and suffering much, states in a conversation the day before his death, "that he was freer from pain, and was not suffering so much," and gave no expression in said conversation, of his opinion as to the result of his wounds, whether he

[Blackburn v. The State.]

thought he would die or get well, though the attending physician was satisfied, upon his examination of his wounds, that the injured person would die; this Court is not persuaded that such primary evidence justified the admission of the conversation as dying declarations of the deceased.

2. *Same; when admissible.*—The declaration of the deceased to be admitted in evidence as "dying declarations" must have been made under a sense of certain and impending death, and relate to the circumstances causing his death.

FROM the City Court of Montgomery.
Tried before the HON. THOMAS M. ARRINGTON.

The facts sufficiently appear from the opinion of the Court.

JAS. S. FULLER, for appellant, insisted that the predicate for the admission of the declarations of deceased, as his dying declarations, was not sufficiently laid; and, filed a brief and argument, citing *Hussey v. State*, 87 Ala. 127; *Walker v. State*, 52 Ala. 192; *May v. State*, 55 Ala. 41; *Kilgore v. State*, 74 Ala. 2; Russell on Crimes, 9 Ed. 3 Vol. pp. 2b0-2-3.

WM. L. MARTIN, Attorney-General for the State, cited *Ward v. State*, 78 Ala. 441; *McLean v. State*, 16 Ala. 672; *Willis v. State*, 74 Ala. 21; 1 Gr. Ev. §§ 158-60 and Wharton Cr. Ev. § 282.

HARALSON, J.—Two witnesses, Dr. Hill and J. B. Scott, were examined by the State, preliminary to the admission of what are termed the dying declaration of the deceased.

The substance of the Doctor's evidence was, that he was called to see the deceased, and in the presence of another party who aided him, examined the wound, and came to the conclusion that it was fatal; that he said to the party assisting him, in the presence and hearing of deceased, "that all the shot had gone to the hollow;" that deceased made no reply to this remark; that he did not ask witness what he thought would be the result of the injury, and made no statement about what he thought of his own condition.

The witness Scott testified, that he visited the deceased in the morning of the day, the evening of which he died, (as he supposed, for they buried him the next day), and had a conversation with him, in which he told him of an angry altercation which occurred between him and the defendant, on the day he was shot, and when and how he was shot,

about a half or three quarters of an hour afterwards; that in that conversation, the deceased did not state who shot him, or what he thought would be the result of his injuries; that he did not say, that he thought he would die, or that he would get well, and made no statement to the witness how he felt, except, when asked by him, before he made the statement referred to, how he felt, and he stated "that he was freer from pain and was not suffering so much." It was also shown, that deceased was much prostrated from the shock of the wound and suffered greatly, so much so, that the physician when he visited him, and Scott, afterwards, gave him, each, a dose of morphine.

On the foregoing preliminary proofs, the Court admitted in evidence against the objection and exception of defendant, the statements of deceased to said Scott, as dying declarations.

The law in respect to the admissibility of such declarations has been so repeatedly discussed, and is so well settled by this Court, as to require no necessity for an attempt to further elucidate it. We simply refer to some of the well understood rules on that subject, as applicable to this case. Such declarations are not admissible unless they appear to have been made under a sense of certain and impending death. It is not what the Court, which passes upon their admissibility, may believe the character of the deceased was; for, although it may appear to the Court, or to any one capable of thinking rationally, that there was no possible hope of recovery, yet the question, aside from that is, what was the state of the declarant's mind, when the declarations were made; did he appreciate the fatal character of his injury, and were his declarations uttered under the sense and solemnities of impending dissolution. If so, then, "when the death of the deceased is the subject of the charge, and the circumstances the subject of the dying declarations," they may be admitted in evidence, otherwise not. *Walker v. The State*, 52 Ala. 192; *Kilgore v. The State*, 74 Ala. 7; *Ward v. The State*, 78 Ala. 441; *Hussey v. The State*, 87 Ala. 121.

It will appear from the evidence of the physician, that he said nothing to the deceased in respect to the character of his wound, nor did deceased say anything to him about it, or ask him any questions. The only thing that was said by the doctor, that tended to show any intimation by him to deceased as to the character of the injury, was that he said in his presence to another party, that the shot had all entered the hollow; but we are not sure, deceased heard this

5–98.

remark, and if he did, that it conveyed the impression to him, that his injury was, on that account fatal.

When the witness, Scott, had the conversation with him, deceased said he was feeling freer from pain, and made no intimations at all, as to whether he thought he would or would not recover. If he had supposed he was certainly going to die, he would very likely have said something about it. The very facts he detailed, his reticence on the subject of his condition, and that he expressed himself as feeling better, would seem to indicate that deceased was not yet in despair of recovery, especially when we remember that a party in his condition, incapable of reasoning and reflecting well on his own condition, is often hopeful until unconsciousness and death ensue.

In the face of the scrutinizing caution with which the authorities admonish trial judges, in the admission of such evidence, we are persuaded that the primary proofs in this case, did not justify the admission of the conversation had between the deceased and the witness Scott, as dying declarations.

Reversed and remanded.