# Gerald *v.* The State.

## *Indictment for Murder.*

1. *Organization of jury; separation of jurors selected or empan-nelled no ground for discharge of jury or defendant.*—On the trial of a capital case, the fact that a person who had been drawn and selected as a proper juror, but before he was sworn and before the jury was completed, he was allowed by the court to leave the jury box and go to another part of the court room, does not constitute a ground for the discharge of the jury after it has been empanneled, or for the discharge of the defendant. Until one summoned for a juror to try the cause has been sworn as such, he does not become a juror to try it.

2. *Same; fact that persons summoned as special jurors have served on other capital cases no ground for challenge.*—In the organization of a jury to try a capital case, the fact that some of the persons summoned to serve as jurors had served during the same term of the court upon other juries in the trial of other and distinct murder cases, having no connection, in any way, with the case on trial, and that in such other cases verdict of guilty against the defendants were returned, furnishes no ground for challenge for cause to such jurors.

3. *Same; postponement of trial in capital case.*—In a capital case where the trial is set for a week following the order, and a special venire ordered including the regular jurors drawn and summoned for that week, if the trial is then postponed to a day in an ensuing week, it is not error for the court to order that the special jury drawn for the trial and the regular jurors drawn for the week of the court in which the cause was set for trial should appear in the court on the day to which the case is continued for the trial of the cause.

4. *Evidence; admissibility of dying declarations.*—On a trial under an indictment for murder, where it is shown that the deceased,· after being shot said to the defendant, "It is no use shooting me any more, I am going to die anyhow," it is competent for the physician who attended the deceased after he was wounded, and who stated that at that time he was in

an extreme condition and death was impending, to testify
to a statement made to him by the deceased at that time,
that the defendant "killed me for nothing."

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The appellant, Adolphus S. Gerald, Jr., was tried
under an indictment charging that he "unlawfully and
with malice aforethought killed D. A. Hyatt by shooting
him with a pistol," was convicted of manslaughter in
the first degree and sentenced to the penitentiary for
ten years.

On July 17, 1900, the defendant being present, the
cause was set for trial on August 2, 1900. There was an
order made for the drawing of a special venire for the
trial of the case. On August 2d, the cause was continued
until August 3d, the minute entry was as follows:
"This day came the State by its solicitor, and came also
the defendant in his own proper person and by attor-
ney, and the trial of this cause having been set for the
2d day of August, 1900, and continued to this day, and
the defendant not being ready for trial, it is ordered
by the court that the trial of this case be and it is
hereby reset for August 13, 1900, and it is further or-
dered by the court that the special jurors drawn at
this term of the court for the trial of this cause and the
regular jurors summoned for the week of the court in
which this cause was originally set for trial at this term
shall appear in this court on said 13th day of August,
1900, for the trial of this cause, to which action of the
court the defendant duly excepted."

When the cause was called for trial on August 13,
1900, the defendant showed to the court that members
of the venire which had been summoned to try his case
had previously thereto been summoned on other murder
cases and that they had served as jurors upon said other
murder cases and had found the defendants guilty. The
bill of exceptions then recites that "thereupon the de-
fendant challenged the entire panel and objected to
being tried by said venire, on the ground that the same
had returned verdicts of guilty in cases similar to this.
The court refused to allow such challenge and to this
ruling the defendant duly excepted.

During the organization of the jury for the trial, there were drawn the names of several persons summoned to serve as jurors who had served upon other juries in the trial of other and distinct murder cases during the week for which the defendant's case was set, and had returned verdicts of guilty. The defendant separately challenged for cause each of such persons, as their names were drawn, but the court refused to allow such challenges and the defendant separately excepted.

It was shown that there was no connection between such other murder cases and the pending one. The defendant then moved the court to quash the venire upon the ground that the same regular panel drawn and summoned to try his case had already served one entire week during the then term of said court, and upon the further ground that the court had no authority to continue the regular juries summoned to serve one particular week over to another week of the same term, unless engaged at the time in the trial of the case which had been submitted to them. The bill of exceptions recites in reference to this motion, that this fact was made to appear to the court, but at the time the case was set over the "defendant objected and excepted to its being reset, and made no objection to the order of the court requiring the juries to return as a venire to try the case." Thereupon the court overruled the motion to quash the venire, and to this ruling the defendant duly excepted.

During the drawing and empanneling of the jury and after C. B. Teasley had been drawn and passed upon, but before the drawing of the jury was completed, and before the jury had been empanneled or any of the jurors had been sworn, said Teasley was allowed by the court to go to another part of the court house. Upon these facts the defendant moved the court to discharge the jury, upon the ground that there had been a separation of the jury without his consent. The court overruled the motion, and to this ruling the defendant duly excepted. Upon the same grounds the defendant moved that he be discharged. The court overruled this motion, and the defendant duly excepted.

The facts relating to the rulings of the court upon the admission of the statements made by the deceased are sufficiently stated in the opinion.

JOHN W. A. SANFORD, JR., for appellant, cited Code of 1896, §§ 4988, 5010; *Finley v. State,* 61 Ala. 201; *Woodley v. State,* 103 Ala. 23; *Butler v. State,* 72 Ala. 179.

CHAS. G. BROWN, Attorney-General, for the State. It was no ground to quash the venire because the jurors or any of them had served as jurors the preceeding week of the court.—*Jones v. State,* 104 Ala. 30; *Arp v. State,* 97 Ala. 5.

There is no merit in the objection and motion to discharge based upon conduct of one Teasley, a talesman, who had been selected, but not sworn, leaving his seat, and with permission of court going to opposite side of the court house before the jury had been empanneled or sworn and before indictment was read and the plea of defendant presented to the jury.—*State v. White* (La.), 26 So. Rep. 849; *State v. Paterno* (La.), 9 So. Rep. 442; *Nabors v. State,* 25 So. Rep, 530; *Williams v. State,* 45 Ala. 157.

The court did not err in refusing to quash the venire on the ground that the regular juries for the week in which the cause was first tried were served upon the defendant.—*Thomas v. State,* 94 Ala. 74.

The dying declarations were properly admitted. *McQueen v. State,* 103 Ala. 12; *Sullivan v. State,* 102 Ala. 135; *Ward v. State,* 78 Ala. 441; *Jordan v. State,* 81 Ala. 1; *McQueen v. State,* 94 Ala. 50. The bill of exceptions does not state that it contains all the evidence in the case; nor that this was all the evidence bearing on the admissibility of the dying declarations. The presumption will be that there was testimony rendering the dying declarations admissible. Construing the bill of exceptions most strongly against the appellant, it is evident that the cause was simply postponed or continued to the 13th of

August, 1900, and such being the case the court did not err in overruling the motion to quash the venire. *Thomas v. State,* 94 Ala. 74.

HARALSON, J.—1. Until one summoned as a juryman to try a cause has been sworn as such, he does not become a juryman to try it. The fact that Teasley, who had been ascertained and accepted by each party as a proper juryman, before he was sworn, and while the preliminary steps were being taken to select and complete a jury, had been allowed by the court to step to another part of the court-house, did not constitute a ground for the discharge of the jury after it had been impanneled. nor did it operate to discharge the defendant, as moved for by him on the ground that there had been a separation of the jury.

2. While the selection of the jury was proceeding the names of certain jurors were drawn who had served during the term upon other juries in the trial of other and distinct murder cases, having no connection in anywise with this case, wherein verdicts of guilty against the defendants therein were returned, and the defendant herein separately submitted challenges for cause of each of such jurors so called, and the court refused to allow each of such challenges. On the same ground, the defendant objected to being tried by said *venire,* and challenged the entire panel of jurors. These motions the court separately overruled, and defendant excepted. We fail to see any merit in either of said motions, and the court very properly overruled them.

3. On the 17th July, 1900, the defendant being present, the cause was set for trial on the 2d of August following, and 100 jurors including the regular jurors summoned for the week in which the cause was set for trial, were ordered to be summoned by the sheriff for the trial of the case, and a list of the names of said 100 jurors were ordered to be served on the defendant forthwith, the defendant in open court acknowledging that he had been served with a copy of the indictment in the cause; and the names of the special jurors were drawn from the jury box in open court in the presence of de-

fendant.  On the 3d of August, 1900, the cause having been continued or laid over from the day before,—the 2d of August,—till that day, the defendant not being ready for trial, it was ordered by the court that the trial be and the same was set for August 13th, 1900, and it was further ordered that the special jurors theretofore drawn for the trial, and the regular jurors summoned for the week of the court in which the cause was originally set for trial,—the week in which the 2d of August fell,—should appear in court on said 13th of August, 1900,—the following week,—for the trial of the cause, to which action of the court, the defendant objected and excepted.  The ground of objection as stated was, "that the court had no authority to continue the regular jurors summoned for one particular week over into another week of the same term, unless engaged at the time in the trial of a cause which had been submitted to them," but defendant "made no objection to the order of the court requiring the jurors to return as the *venire* to try the case."  There was no error in overruling this objection.  It was not questioned that the jury was properly made up for the week in which the trial was originally set.  It was composed of 100 jurors, including the regular jurors summoned for the week in which the cause was set for trial, which was the week subsequent to the one when the order setting the case was made and entered.  The jury was, therefore, the one ordered for the trial, set for the 2d of August, the very jury provided by the terms of the act, "To more effectually secure competent and well qualified jurors in the county of Montgomery."  Acts, 1886-7, p. 190, § 10.  "The fact or accident by which the trial was not entered upon until a day during the succeeding week, could not properly render it necessary that a new order should be made, setting another day for the trial, or, that a new *venire* should be summoned or served on the defendant."  The case was, under the orders of the court, merely passed or laid over from one day to another, from the 2d of August, the day it was set for trial, until the 13th of that month,—in the succeeding week,—which was not improper to be done.—*Thomas v. State,* 94 Ala. 74.

4.   The deceased received pistol shots from the defendant, each of which the evidence shows was necessarily fatal, and from which he died the following day. Dr. Anderson, the physician who was called to see him, being examined by the State, was asked, "Did the dead man, prior to his death, make any statement to you concerning his killing?" The doctor testified that at that time deceased was in extreme condition of profound shock or collapse, and was unable to stand up. The question was objected to because not admissible as dying declarations; but the court allowed him to answer, that deceased said to him, "The dirty cur killed me for nothing." The evidence afterwards further showed, that deceased had said (to defendant), "It is no use shooting me any more, I am going to die anyhow." This last declaration was after he was shot, and before the statement made to Dr. Anderson. The declarations of the deceased touching the homicide, although he does not state at the time that he is conscious of impending death, if made under such circumstances as in the judgment of the court will warrant an inference, are admissible as dying declarations. The declarations made by the deceased to the physician were properly admitted in evidence. They showed very conclusively that deceased felt that he was fatally shot and would die.—*McLean v. The State,* 16 Ala. 672; *Blackburn v. The State,* 98 Ala. 65; *Justice v. The State,* 99 Ala. 180; *Ward v. The State,* 87 Ala. 441.

We find no error in the record, and the judgment and sentence of the city court are affirmed.

Affirmed.

*Indictment for Murder.*

