# CASES

# SUPREME COURT OF ALABAMA

## NOVEMBER TERM, 1902.

## Smith *v.* The State.

*Indictment for Murder.*

1. *Organization of jury in capital case; what constitutes venire to be served on defendant.*—When a day set for the trial of a capital case is a day of the same week in which the special jurors are drawn, the special jurors so drawn, together with the panel of petit jurors organized for the week constitute the venire from which the jury to try such case shall be selected, (Code, § 5005); and, therefore, constitutes the venire, a copy of which, together with a copy of the indictment, must be served on the defendant or on his counsel at least one entire day before the day set for his trial; and in such case, persons who, though they were not drawn as jurors for that week, were summoned at the time the juries were being organized to supply the places of persons who had been drawn and for good reason had been excused from attendance, by the court, constitute in part the regular juries organized for the week and should be included in the venire served upon the defendant.

2. *Same; same; construction of order of the court.*—When the day set for the trial of a capital case is a day of the same week in which the special jury was drawn, and in the first part of the court's order relating to the service of the special venire upon the defendant, it is recited that the special jurors so drawn and summoned, "together with the petit jurors *drawn* and empannelled for this week of the court" should constitute a special venire, and in the latter part of the order it is directed that the sheriff should serve a copy of the list of special jurors, "together with a copy of the regular petit jurors organized for this week of the court," the word "drawn" employed by the court in the first part of the order, was used in

[Smith v. The State.]

the sense of selected; and such order of the court authorizes including in the list served upon the defendant the names of persons who were put upon the regular juries for the week to supply a deficiency in the regular juries for that week.

3. *Evidence; dying declarations.*—In a trial under an indictment for murder, where it is shown that a short time after the deceased was shot, which occurred at 10 o'clock at night, he stated "he did not think he would live till morning, and that he was going to die, and that he wanted to leave a statement of the facts," a sufficient predicate is laid for the introduction in evidence as dying declarations of all the statements of facts relating to the killing so made by him.

4. *Evidence; admissibility of evidence as against one who was present aiding and abetting in the homicide.*—On a trial under an indictment for murder, where from the evidence introduced it was open to the jury to find that the defendant was present aiding and abetting in the killing of the deceased, although he did not fire the fatal shot, nor was engaged in the altercation, all that occurred between the deceased and the persons who fired the fatal shot and were engaged in the altercation is pertinent and admissible in evidence against the defendant; and likewise declarations made by the defendant during the evening of the fatal difficulty in the nature of threats and tending to show a preconceived intention on his part to have the difficulty, are admissible in evidence.

5. *Appeals; when charge requested by defendant will not be reviewed.*—Where it is stated in the bill of exceptions that "the defendant requested the general charge which the court refused to give," and that defendant excepted to this refusal, but no charge of any sort is set out in the bill of exceptions, the court on appeal will not review the action of the court in refusing to give the charge referred to.

APPEAL from the Circuit Court of Limestone.

Tried before the HON. OSCEOLA KYLE.

The appellant in this case, Robert Smith, was jointly indicted with Frank Orr and Pink Botts for the murder of Robert Taylor by shooting him with a pistol. Frank Orr and Pink Botts had been separately drawn and convicted and a severance was ordered as to the defendant Robert Smith and he was tried separately and was convicted of murder in the first degree and sentenced to the penitentiary for life.

The defendant was arraigned on September 29th, 1902, on which day a special venire was drawn, and a day of the week in which said special venire was drawn nas named as a day for the trial of the defendant. After the drawing of the special venire, which is recited in the minute entry of the court, the minute entry then continues as follows: "It is further ordered by the court that said special jurors so summoned and drawn together with the petit jurors drawn and empannelled for this week of the court shall constitute the venire from which the jury to try this cause shall be drawn, and it appearing that the defendant is confined in the jail of Limestone county, Alabama, it is further ordered by the court that the sheriff of this county shall serve a copy of the jury so drawn as above stated together with a copy of the regular petit jurors organized and empannelled for this week of the court, also a copy of the indictment, " etc.

The defendant moved the court to quash the venire in this case upon the following grounds: "1st. Because the order of the court is not in conformity with the statute. 2. Because by order of the court, made in the case, the sheriff was ordered to serve on the defendant, Robert Smith, a copy of the petit jury *drawn* and empannelled for the first week of this term of the court. 3. Because the list of jurors served on the defendant as constituting the venire in this case is not in accordance with the law. 4. Because the list of jurors served on defendant as constituting the venire in this case, contains the names of talesmen summoned to supply a deficiency in the regular venire of petit jurors for the first week of this term of the court. 5. Because the list of jurors served on the defendant as constituting the venire in this case, contains the names of O. B. Newby, R. N. Bullington, J. D. Barksdale, N. J. Tribble and W. M. Barksdale, who were summoned as talesmen to complete the venire of petit jurors for the first week of this term of court. 6. Because by order of the court, made in this case, the sheriff was ordered to serve on the defendant a copy of the petit jury drawn and empannelled, as constituting a part of the venire in this case, and the list served on the defendant as a copy of the petit jury drawn and empannelled contains the names of five talesmen, who were summoned to sup-

[Smith v. The State.]

ply a deficiency in the regular venire of petit jurors for the first week of this term of the court."

It was agreed in open court that the facts set forth in this motion as to the talesmen were true, and it was there admitted that the list of the regular jury drawn and empannelled for the week had been served on the defendant one entire day before the day set for this trial, and that on said list were the names of five jurors summoned as talesmen to complete the jury. The court overruled the motion to quash the venire and to this ruling the defendant separately excepted. While the jury to try the case was being selected, the names of O. B. Newby, R. N, Bullington, J. D. Barksdale, N. J. Triffle and W. M. Barksdale who were summoned to supply the deficiency in the regular venire for the first week were drawn from the box. In each case the defendant challenged each one of them for cause, upon the ground that they were on the list served on the defendant contrary to the order of the court. The court overruled this motion, and the defendant duly excepted. The other facts of the case relating to the rulings of the trial court reviewed on the present appeal, are sufficiently shown in the opinion.

II. C. THACH, for appellant.—The order of the court that the petit jurors drawn and impannelled for the first week should constitute a part of the venire to try this defendant was not in conformity with the statute. The list of jurors drawn and empannelled was not served on the defndant according to the order of the court. The list served on the defendant contained five talesmen who had been summoned (but not drawn) to suply the deficiency in the regular panel for the first week.

Among the judicial duties, which can be performed alone by the court, is the order to summon jurors for the trial of capital felonies, the order to summon talesmen to complete a defective panel, and many others. The statutory commands which declare these judicial duties are not directory. They are mandatory on the court, and must be obeyed as they are expressed. And we have many times ruled, if they be not obeyed, this is an error

[Smith v. The State.]

which will reverse a convictoin.—*Finley v. State*, 61 Ala. 201; *Cross v. State*, 63 Ala. 40; *Scott v. State*, 63 Ala. 59; *Phillips v. State*, 68 Ala. 469; *Oliver v. State*, 66 Ala. 8; *Spicer v. State*, 69 Ala. 159. See also *Washington v. State*, 81 Ala. 35; *Hughes v. State*, 117 Ala. 28.

MASSEY WILSON, Attorney-General, and THOS. C. Mc-CLELLAN, for the State.—The court properly overruled the motion to quash the venire. The record shows that these men Newby *et al.* were necessary to complete jury number two and as such became a part of that organized jury on the first day of the week within which the defendant's trial was set and was had. It is submitted that these men were not talesmen, but on the contrary were a part of the regular panel of petit jurors for the week of his trial.

The written, dying declaration of Robert Taylor was properly admitted in evidence and read to the jury. *Cole's Case*, 105 Ala. 76; *Clark's case*, 105 Ala. 91; *Johnson's case*, 102 Ala. 1; *Boulden's case*, 102 Ala. 78; *McQuin's case*, 94 Ala. 50; *Johnson's case*, 47 Ala. 31; *Sullivan's case*, 102 Ala. 135.

McCLELLAN, C. J.—Under the facts disclosed in the transcript before us, the Jurors, O. B. Newby, R. N. Bullington, J. D. Barksdale, N. J. Tribble and W. M. Barksdale belonged to and in part constituted the regular juries *organized* for the week though they had not been *drawn* as jurors for that week, but were summoned at the time the jurors were being organized to supply the places of persons who had been drawn and for any reason had failed to appear or been excused from attendance by the court.—Code,§ 5011; *Brown v. State*, 128 Ala. 12, 16. These persons were, therefore, constituents of the *venire* for the trial of the defendant composed, as the statute requires, of the special jurors drawn under section 5004 of the Code "together with the panel of the petit jurors organized for the week," the case having been set down and coming on for trial on a day of the week in which the order to that end was made.—Code, § 5005; *Brown v. State, supra*. The names of these men as members of the regular juries for the week, and in that capacity

going to make up the *venire* for this case, were placed on the list of jurors served on the defendant one entire day before the day set for the trial; and they were present at the trial for service as such jurors. The defendant so far as these jurors are concerned—and there is no complaint as to others—had for his trial the jurors whom the statutes provide he should have. Moreover, these were among the jurors provided for his trial by the order of the court, for while in the forepart of the court's order the regular jurors of which in part the special *venire* was to be composed are referred to as "the petit jurors *drawn* and empanelled for this week of the court," in the after part of the order direction is given to the sheriff to serve a copy of the list of special jurors "together with a copy [of the list] of the regular petit jurors organized and *empanelled* for this week of the court," (the italicization is ours); and from this it is clear that the word "drawn" was here employed by the court in the sense selected whether by drawing from the jury box or by summoning by the sheriff to supply a deficiency in the regular jurors for the week. This interpretation is necessary to admit of the execution of the order in respect of putting the names "of the regular petit jurors organized and empanelled" for the week on the list to be served on the defendant; and we so construe the court's order. It follows that the circuit court did not err in overruling defendant's motion to quash the special *venire*, nor in any other of its rulings in relation to jurors named.

As a predicate for the introduction of deceased's dying declarations it was shown that he was shot in the body and died from this wound three days afterwards, that a short time after the shooting, which occurred about ten o'clock at night, the wounded man said "he did not think he would live till morning, that he was going to die, and that he wanted to leave a statement of the facts." He thereupon made the statements offered in evidence. The predicate was sufficient.—*Cole v. State,* 105 Ala. 76; *Clark v. State,* 105 Ala. 91; *Johnson v. State,* 102 Ala. 1; *Bouldin v. State,* 102 Ala.78; *McQueen v.*

*State,* 94 Ala. 50; *Johnson v. State,* 47 Ala. 9, 31-32; *Gerald v. State,* 128 Ala. 6.

The competency of the dying declarations of Taylor, the wounded man, as against this defendant was adjudged on the former appeal in this case.—*Smith v. State,* 133 Ala. 73.

On the occasion of the fatal wounding of Taylor and at the scene thereof a public supper was being served. Taylor was in possession of the grove where the supper was being served and had rented it to the persons giving the supper for that purpose. This defendant during the evening had flourished a pistol and declared: "We are going to break this thing up;" "We are going to break up this thing to-night," and: "We are going to break this thing up before day; we will break it up in damn row." When making this last remark he was talking to Frank Orr. After this Frank Orr fired his pistol. Thereupon Taylor came from his house to the place where the supper was being had, and told Orr he must not have any fuss and must stop it, and that he must not have any shooting there. Then Orr said: "I will shoot you," and attempted to shoot Taylor. The latter grabbed his pistol and a scuffle over it ensued between him and Orr. Then, as Taylor seemed to be getting the better of the scuffle, Orr called Pink Botts to come and shoot Taylor, saying: "He has got my pistol and I cannot shoot him." One witness testified that this call was: "Come on boys," or "come on Pink, he is about to get my pistol." Both the defendant and Botts responded to it, and came running to the place each with a pistol in his hand. Botts was a little in advance of the defendant and got immediately up to the contending parties. A by-stander supervened between the defendant and Taylor, Orr and Botts to prevent his getting to Taylor. Whereupon the defendant, still trying to get to Taylor and when only twenty feet away from him and Botts and Orr, cried out in a voice loud enough for Botts to hear: "Let me get to him." Just after this Botts shot Taylor. Undoubtedly on this evedence it was open to the jury to find that the defendant was present aiding and abetting Botts in killing Taylor. So finding, defendant's guilt *vel non,* and the degree of his guilt if guilty of the homicide at

all, depends upon all the facts and circumstances of the difficulty between Orr and Taylor, and of Botts' intervention therein, since if under these facts and circumstances Orr and Botts were guilty of murder or any other degree of homicide so, too, and in like degree was the defendant guilty. Hence, it is plain that all that occurred between Taylor, on the one hand, and Orr and Botts, on the other, though defendant was not present at the inception of the trouble, was pertinent and competent in evidence for and against the defendant, who in legal contemplation, having, on the assumption upon which we are now proceeding, aided and abetted in the taking of Taylor's life, is as much and to the same extent responsible for that result as Botts whose hand destroyed that life. So, too, of his declaration during the evening of intention to break up the assemblage or occasion in a row, etc. etc. What happened was in line with these declarations, and they are to be considered as in the nature of threats tending to throw light upon his conduct at and just before the shooting and to give the character of premeditation to the part he took by way of encouragement of Botts in firing the fatal shot. The court committed no error, therefore, in overruling defendant's several objections to the testimony we have been considering. There is no occasion to rest this conclusion on the theory that Orr, Botts and the defendant were conspirators, and that, of consequence, the acts and sayings of each on that evening were the acts and sayings of all so far as they might be supposed to have any bearing upon the homicide; though we are not to be understood as intimating that the rulings of the court cannot be justified on that theory also.

It is stated in the bill of exceptions that "the defen dant requested the general charge, which the court refused to give," and that defendant excepted to this ruling. No such charge—no charge of any sort in fact— is set out in the bill of exceptions. We, therefore, cannot review this action of the court.—*Dannelley v. State,* 130 Ala. 132. We may remark, however, that on the evidence the defendant was not entitled to the affirmative charge with hypothesis, and of course not without.

We find no error in the record, and the judgment of the Circuit Court must be affirmed.