[No. 1290, August 29, 1910.]

TERRITORY OF NEW MEXICO, Appellee, v. DICK EAGLE, Appellant.

### SYLLABUS (BY THE COURT.)

1. Where a dying person makes no declaration that he knows his danger or is conscious of his impending death and there is nothing in his conduct, or that of those present, understandingly acquiesced in by him, from which such consciousness of impending death may be ascertained; yet, where it is reasonably to be inferred from the terrible character of the wound and his state of illness that he was sensible of his danger and conscious of impending death, his statements, made under such circumstances, relative to the homicide are properly admitted as a dying declaration.

2. Under a statute providing "When the jury retires to consider its verdict it shall be allowed to take the pleadings

in the cause, the instructions of the court, and any instruments of writing admitted as evidence, except depositions," it is error to permit the dying declaration which has been reduced to writing, to be taken to the jury room for investigation and examination by the jurors.

Appeal from the District Court for Bernalillo County before IRA A. ABBOTT, Associate Justice. Reversed and remanded.

HERBERT F. RAYNOLDS and FRANK H. MOORE for Appellant.

Arraignment and reception of the plea in a criminal trial is absolutely of no legal validity when such action takes place elsewhere than at the county seat of the county in which the indictment was found. C. L. 1897, secs. 903, 904, 905, 1050, 3398, 3422; Laws of 1899, chap. 4, sec. 2; U. S. v. Crain, 162 U. S. 637, 645; Co. Litt. 263 a; 2 Hale's Pl. Cr. 219; 4 Bl. Com. 322, 341; 1 Chitty's Cr. Law 419; Commonwealth v. Hardy, 2 Mass. 303, 316; Hopt v. Utah, 110 U. S. 574, 579; Territory v. Gonzales, 13 N. M. 94, 79 Pac. 705; Decennial Digest, Title Crim. Law, sec. 261; 11 Cyc. 735, 737, 738, 726, 728 and cases cited; 2 Enc. of P. & P. 7-9; 8 A. & E. Enc. of Law, 2 ed., 34, note 1; Brumley v. State, 20 Ark. 77; Williams v. Reutzel, 60 Ark. 155; Galusha v. Butterfield, 3 Ill. 277; Jordan v. People, 36 Pac., Col. 218; White v. Riggs, 27 Me. 114; Herrshofer v. Beverly, 43 N. J. Law 139; ex parte Williams, 65 S. W., Ark. 711; Eaton, etc., Ry. Co. v. Varnum, 10 Ohio State 622; Bell v. Jarvis, 107 N. W. 547, 98 Minn. 109; American Insurance Co. v. Pappe, 43 Pac., Okla. 1085; U. S. v. Cornell, Fed. Cases No. 14868, 2 Mason 60; in re Millington, 24 Kas. 214; Cooper v. The American Central Ins. Co., 3 Colo. 318.

In order to render a dying declaration admissible in evidence, it must be shown that the declarant knew or believed that he was beyond hope of recovery. Wharton on Homicide, 3 ed., secs. 631, 632, 634, 637; State v. Meyer, 65 N. J. Law 237, 47 Atlantic 486, 86 A. S. R. 634, note

637; Wigmore on Evidence, vol. 2, secs. 1438 to 1442; Bishop's New Criminal Procedure, vol. 1, sec. 1212; Jones on Evidence, 2nd ed., sec. 332.

It was error to allow dying declaration to be taken out by jury into the jury room over objection of defendant. C. L. 1897, sec. 3002; State v. Moody, 18 Wash. 165, 51 Pac. 356, 359; Abbott's Trial Brief, Criminal Causes 704.

The court erred in instructing the jury that a reasonable doubt was a doubt for which a reason could be given. State v. Cohen, 108 Ia. 208, 78 N. W. 857, 75 A. S. R. 213, 217; Siberry v. State, 133 Ind. 677; Cowan v. State, 22 Neb. 519; Morgan v. State, 48 Ohio St. 371; Carr v. State, 23 Neb. 749; Thomas v. State, 28 Southern 591, 126 Ala. 4; Bodine v. State, 29 South. 926, 129 Ala. 106; Klyce v. State, 28 South. 827, 78 Miss. 450.

The court erred in instructing the jury that the defendant was bound to retreat if he could do so safely. Runyan v. State, 57 Ind. 80, 84; Beard v. U. S., 158 U. S. 561; Wharton on Homicide, 3 ed. 473, sec. 295 and cases cited; Bishop's New Criminal Law, vol. 1, par. 850; 2 Wharton Crim. Law, par. 1019; Gallagher v. State, 3 Minn. 270; Pond v. People, 8 Mich. 150, 177; State v. Dixon, 75 N. C. 275, 295.

The court erred in its failure to instruct as to the dying declaration introduced in evidence. Wharton on Homicide, 3 ed., par. 650; Brickwood Sackett's Instruction, par. 3100, vol. 2; C. L. 1897, sec. 2992; State v. Mayo, 42 Wash. 540, 85 Pac. 251, 255; State v. Eddon, 8 Wash. 292, 36 Pac. 139.

Where the evidence in a prosecution for homicide is such that the jury might find a verdict for one of the different degrees of homicide, the jury should not be left to draw the distinction between murder in the first and murder in the second degree merely from general definitions, and from a definition of murder in the second degree as including all other kinds of murder not included in the definition of murder in the first degree. Wharton on Homicide, par. 159, pp. 246, 247; C. L. 1897, sec. 2992; Crain v. U. S., 126 U. S. 625, 645.

FRANK W. CLANCY, Attorney General, for Appellee.

In the absence of constitutional provisions forbidding such legislation, the legislature has power to authorize or direct the holding of courts at places other than county seats. C. L. 1897, sec. 2875; U. S. v. Gwyn, 4 N. M. 635; Woods v. McCay, 144 Ind. 316; Cooper v. Mills Co., 69 Iowa 356; Whallon v. Circuit Judge, 51 Mich. 503; Mathias v. Cook, 57 Kan. 16.

To establish the pre-requisite facts, it is not necessary that the declarant shall express a conviction or belief that he must or will die. They may be reasonably inferred from attendant facts and circumstances, as any other fact of judicial ascertainment. Resort may be made to the nature and extent of his wounds, his physical state, his evident danger, his conduct, his contemporaneous expressions, the occurrence of death soon thereafter and all other circumstances at the time; and if from these the reasonable inference is, that the declarations were made under a conviction of impending death, it is sufficient. McLean v. State, 16 Ala. 672; Wills v. State, 74 Ala. 21; Kilpatrick v. Com., 31 Penn. St. 198; 1 Green on Ev., sec. 158; Whar. Crim. Ev. sec. 282; Ward v. State, 78 Ala. 446.

A dying declaration is not a deposition. Lutcher v. U. S., 72 Fed. 972; Crenshaw v. Miller, 111 Fed. 451; Water Co. v. American Co., 65 Fed. 535; 1 Bouv. Law Dic., title, Deposition; The Sallie P. Linderman, 22 Fed. 558; 21 Cyc. 979-80; Prince's General Laws 145.

The defendant was bound to retreat if he could do so safely. Beard v. U. S., 158 U. S. 561; Alberty v. U. S., 162 U. S. 499; Allen v. U. S., 164 U. S. 498; Erwin v. State, 29 Ohio St. 186.

It was not error to instruct that a reasonable doubt is one for which a reason could be given. Territory v. Livingston, 13 N. M. 326, 327; U. S. v. Stevens, 27 Fed. Cas. 16,392, pp. 1313, 4; U. S. v. Butler, 1 Hughes 491; U. S. v. Johnson, 26 Fed. 685; U. S. v. Jackson, 29 Fed. 503, 504; U. S. v. Jones, 31 Fed. 724; U. S. v. Cassidy, 67 Fed. 782; Wallace v. State, 41 Fla. 580, 582; Vann v. State, 83 Ga. 52; State v. Jefferson, 43 La. Ann. 995;

Territory v. Dick Eagle.

People v. Guidici, 100 N. Y. 509, 510; State v. Morey, 25 Oreg. 256, 258; Emery v. State, 101 Wis. 655; Butler v. State, 102 Wis. 868, 869; State v. Serenson, 7 S. Dak. 282, 283.

The court was not bound to comment on the weight of the dying declaration introduced in evidence. Territory v. O'Donnell, 4 N. M. 210; U. S. v. DeAmador, 6 N. M. 178; Territory v. Watson, 12 N. M. 421; Trujillo v. Territory, 7 N. M. 53.

### STATEMENT OF THE CASE.

The defendant, Dick Eagle, was indicted at the September, 1908, term of Valencia County District Court, for murder in the first degree, for killing a Pueblo Indian, Santiago Eteewa, said killling having taken place in Valencia County. After the finding of the indictment and arrest of the defendant, but before arraignment, he was confined in the county jail of Bernalillo County, at Albuquerque, New Mexico.

That on the 27th day of November, 1908, in the District Court of Valencia County, then in session at the court house in the County of Bernalillo, in the Territory of New Mexico, this cause being then pending in the said District Court of the County of Valencia, and the District Court of Bernalillo County being also in open session on some part of said day, the district attorney being present in behalf of the Territory, the defendant was brought into court in custody of the sheriff and was arraigned upon the indictment and entered a plea of "not guilty." He was afterwards remanded to the custody of the sheriff of Bernalillo County to await trial. At the time of said arraignment defendant was not represented by counsel nor had he been prior thereto. No other arraignment was ever had in this matter other than above stated.

Afterwards, when counsel was appointed to defend him, at their request the venue of the case was changed from the County of Valencia to the County of Bernalillo, and without any further arraignment, the case proceeded to trial.

The Territory produced an alleged dying declaration

of the deceased, Santiago Eteewa. This was introduced in evidence over the objections of defendant. At the conclusion of the trial, and when the case was submitted to the jury, the dying declaration of Santiago Eteewa, which had been reduced to writing, was taken by the jury to the jury room, also over the objection of defendant.

The jury returned a verdict of murder in the second degree. After the verdict, motion for a new trial and motion in arrest of judgment were made by defendant's counsel and overruled by the court. The defendant was sentenced to twenty years in the penitentiary and from this verdict and sentence defendant appealed to this court.

## OPINION OF THE COURT.

WRIGHT, J.—Considering the assignments of error in the order of importance rather than in the order discussed in the brief, we find that the second error complained of relates to the admission in evidence of the dying declaration of Santiago Eteewa. The general rules governing the admissibility of dying declarations are too well established to need any lengthy discussion.

In the case of Blackburn v. The State, 98 Ala. 63, the court in discussing this question uses the following language:

"Such declarations are not admissible unless they appear to have been made under a sense of certain and impending death. It is not what the court, which passes upon their admissibility, may believe the character of the deceased was; for, although it may appear to the court, or to any one capable of thinking rationally, that there was no possible hope of recovery, yet the question, aside from that is, what was the state of the declarant's mind, when the declarations were made; did he appreciate the fatal character of his injury, and were his declarations uttered under the sense and solemnities of impending dissolution. If so, then, when the death of the deceased is the subject of the charge, and the circumstances the subject of the dying declarations, they may be admitted in evidence, otherwise not." Walker v. The State, 52 Ala. 192; Kilgore v. The State, 4 Ala. 7; Ward v. The State, 78 Ala.

441; Hussey v. The State, 87 Ala. 121." See also Wharton on Homicide, 3rd ed., secs. 631, 632, 634 and 637; Underhill on Criminal Evidence, sections 102 to 104, inclusive; Encyclopedia of Evidence, vol. 4, pages 922 to 930.

An examination of the evidence in this case discloses the fact that the evidence upon which the admission of the dying is predicted is contained wholly in the testimony of Dr. Dillon, Mr. Allen and Mr. Bibo, the notary public, who took the statement.

Q. Describe what you found—what his condition was?

A. Well, I found a wound, a bullet wound, supposed to have entered—about—the point of entrance about half an inch to the left of the ensiform appendage, and it ranged downward; the bullet had left the body at about the mid scapular line, posteriorly just above the brim of the pelvis.

Q. Stand up and show where it went in and went out.

A. (Witness demonstrating). The bullet entered about here (indicating).

Q. Yes?

A. About half an inch to the left of the top of this little cartilage that comes down on the breast bone and it came out right about there (indicating) just above this pelvic bone—the wound where the bullet entered was a small puncture—aperture—from which there had been little blood, if any—external bleeding—but the wound here was a large gaping wound from which there was bleeding when I examined him—that day there was no intestinal discharge; but the second time I saw him there was a discharge of intestinal contents at the point of exit of the bullet. Further examination showed that there had been marked internal hemorrhage; the abdomen was markedly distended; his temperature was sub-normal, about 96 I think; his heart action—the heart was rather rapid, about 88 to 90, varying; the man was conscious, but in a rather—semi-conscious, or rather dazed condition; he was not fully normal; he vomited blood; vomited all the

nourishment we could give him, and even vomited water, and later he developed an almost incessant hiccough, or rather it would come on and last for probably thirty minutes or an hour, and then subside for a little while and then return again.

Q. Can you state from the course and direction, or from the point of entrance and point of exit of the bullet, what organs were traversed by the bullet?

A. Not absolutely.

\* \* \*

Q. From that examination of him and your attendance upon him, state if you can, what was the cause of his death?

A. I think the chief lesion—or chief cause of death was peritonitis, due to the bullet wound.

Q. The primary cause of death, then, was the bullet wound?

A. The bullet wound, yes, sir.

Q. What was your professional opinion as to the character of the wound—that is, as to whether it was—it would be fatal or not, when you first saw him?

A. I told his friends that I thought he would die in a few days.

Nowhere in this testimony does it appear that Dr. Dillon told Eteewa of his condition, or in his presence, in any manner, indicated that Eteewa could not recover.

Mr. Allen testified as to the character of the wound to the same general effect as did Dr. Dillon, and in addition thereto testified with reference to what was said and done in the presence of Eteewa at the time of the taking of the deposition, as follows:

"A. It was only a few words—I was only there just a short time, and I told him that I was going back—I made up my mind to send for a notary or bring a notary at once and take his statement—I told him I would be back in an hour or so. I sent a messenger for Mr. Bibo and returned to McCarty's in an hour or so—two or three hours, and he made a second statement similar to the first one."

The Court: "That was to Mr. Bibo."

A. Yes, to Mr. Bibo, and I was present.

Q.  You were present?

A.  I was present—I told him that I was going to bring a justice of the peace, or Mr. Bibo.

Q.  There was nothing said directly as to whether he would get well, or would not?

A.  No, sir, I did not mention it to him.

Q.  How was his condition the second time as compared with the first?

A.  Well, about the same, as far as I could see—he had taken no nourishment or anything of the sort, they told me—about the same; and I did not see any material difference in the length of time.

Q.  Was this statement supposed to be after the doctor had been there?

A.  The doctor was there at the same time—at my first visit—the doctor lived in Laguna and went home—I returned with Mr. Hunt and Mr. Bibo.  Mr. Bibo met me there.  The doctor and I were there together on other matters.

Q.  Mr. Allen, from your observation of his condition at the time that Mr. Bibo was there, what, if any, opinion did you form as to whether he would live or die."

* * *

A.  I thought he would.

Q.  Describe his appearance and what indications there were that led you to the opinion?

A.  Well, his ghastly appearance—his face, and his pulse was very weak.

Q.  Anything else about his appearance that you noted specially at that time?

The Court.  What appearance of blood about him?

A.  Very little of it on the outside, I think; he was bleeding internally—very little on the outside; he had the same shirt on when he was shot—supposed to be—the hole was in the shirt on both sides, he was in his shirt sleeves; it was warm weather.

Q.  At any time when you were with him did you notice any vomiting?

A.  Yes, sir; later in that day.

Q.  Not either of those times.

A. No, sir; I did not notice him vomiting.

Mr. Bibo had no conversation with Eteewa other than the direct questions shown in the dying declaration and did not at any time ask Eteewa as to his condition or his hope or lack of hope of recovery. There was nothing in the dying declaration itself to indicate the state of mind of the deceased at the time the declaration was made. From an examination of the testimony it nowhere appears that Santiago Eteewa indicated at any time by word of mouth or otherwise that he realized his condition and had surrendered all hope of recovery. Under the foregoing evidence it then becomes necessary to determine whether the dying declaration of Santiago Eteewa was made under the sense of impending death and thereby became admissible under the rule hereinbefore stated. There being no expressions from Eteewa himself from which this can be determined and nothing in his conduct at the time the declaration was made from which it may be inferred that he was conscious of his condition, and no communications having been made to him by his medical adviser or friends which were assented to or understandingly acquiesced in by him, we must rely solely upon the terrible character and extent of the wound inflicted in determining whether Eteewa was under the sense of impending death at the time he made the declaration admitted in evidence as a dying declaration. In discussing this question, Wigmore in vol. 2, sec. 442, says:

"In ascertaining this consciousness of approaching death, recourse should naturally be had to the attending circumstances. It has been contended that only the statements of the declarant could be considered for this purpose, or, less broadly, that the nature of the injury alone, could not be sufficient; i. e., in effect, that the declarant must have shown in some way, by conduct or language, that he knew he was going to die. This, however, is without good reason. We may avail ourselves of any means of inferring the existence of such knowledge; and, if in a given case the nature of the wound is such that the declarant must have realized his situation, our object is sufficiently at-

tained.   Such is the settled judicial attitude."   See also Gipe v. State, 1 L. R. A. New Ser. 421.

This seems to have been the well settled rule in England also.   In John's case as reported in 1 East P. C., 357, 358, it appears that it was the unanimous opinion of the judges that:

"If a dying person either declare that he knows his danger, or it is reasonably to be inferred from the wound or state of illness, that he was sensible of his danger, the declarations are good evidence."   See also, King v. Woodcock, 1 Leach, C. L. 503; Anthony v. State, Meigs 265, 33 Am. Dec. 143; McLean v. State, 16 Ala. 672; Hill v. Com., 2 Gratt. 594, 608; 3 Russell Crimes, 9th American from 4th London ed., p. 250; and see Green v. State, 154 Ind. 655, 57 N. E. 637; 1 East P. C. 358; John's Case *supra;* Donnelly v. State, 26 N. J. L. 463; Starkey v. People, 17 Ill. 17; 1 Roscoe Crim. Ev. 37; 1 Bishop New Crim. Proc. 1212; 1 Elliott Ev. 355.   In the case of Mattox v. The United States, 146 U. S. 149, 151, the court commented upon and approved this doctrine.   (See also Wharton on Homicide, 3rd ed., sec. 634.)

In the case at bar it appears that on the day the declaration was made the doctor examined the wounds of Santiago Eteewa and pronounced the same fatal.   From his testimony (quoted *supra*) it appears that the wound was of such a terrible nature and character that his symptoms as to vomiting, internal bleeding, sub-normal temperature, rapid pulse, distended abdomen and later the excretions from the wounds were of such a serious and dangerous nature that it must be inferred therefrom that Eteewa was conscious of his condition and under the sense of impending death at the time the statement was made.

In the case of Anthony v. State, Meig, 265, 33 Amer. Dec. 146, the court used the following language:

"If the dangerous nature and character of the wound, the state and illness of the party, her sinking condition, and her statement of extreme suffering, and of those symptoms which usually precede death, are circumstances from which in any case the consciousness of danger can be collected, they exist in the present case, and would justify

the inference of such consciousness." Anthony v. State, 33 Am. Dec. 146. The facts in this case therefore can lead to but one conclusion, viz., that the statement of Santiago Eteewa was made under the sense of impending death and properly admitted as a dying declaration.

The appellant also assigns as error the taking of the dying declaration to the jury room over the objection of appellant. This dying declaration had been reduced to writing and introduced in evidence. The Supreme Court of Washington in passing upon this point, under a statute similar to ours, in the case of State v. Moody, 51 Pac. 359, says:

"Again, it is claimed that the court erred in allowing the dying declaration to go to the jury room, for the investigation of the jury, over the objection of appellant. We think, without any question, that this was reversible error. The statute does not permit witnesses or depositions to go to the jury room, and for the very best of reasons. And certainly the dying declaration is, in substance, a deposition of a witness; the solemnity of the occasion simply taking the place of the oath which is ordinarily administered to a witness who subscribed to a deposition. No cases are cited on this proposition, but we think it so plainly falls within the ban of the statute and of the law that the citation of authorities is unnecessary."

The dying declaration in this case contains all of the evidence of the deceased, and it would appear to us that the reasoning of the court in the case cited *supra* is sound. Our statute provides as follows:

"When the jury retires to consider its verdict it shall be allowed to take the pleadings in the cause the instructions of the court, and any instruments of writing admitted as evidence, except depositions." Sec. 3002, C. L. of N. M. 1897.

It could not be contended for a moment that a *witness* could be introduced into the jury room after the case had been closed. The same argument would apply with equal force to the deposition of a witness, and under the rule laid down in the Washington case cited *supra,* a dying declara-

tion has all of the essential characteristics of a deposition. If permitted in the jury room for examination and investigation by the jurors, being all of the evidence of that particular witness, it gives undue prominence and weight to the evidence of the deceased and clearly comes within the ban of the statute cited *supra*.

The appellant also assigns as error the fact that appellee was arraigned at the court house in Bernalillo County outside of the County of Valencia, the county where appellant was indicted and where the homicide occurred. The circumstances surrounding this arraignment appear in the statement of facts. In view of the fact that the case must be reversed and remanded for a new trial below, and that the alleged irregularity will doubtless be obviated upon the further proceedings in the cause, we do not find it necessary to pass upon this assignment.

Two other assignments of error were made by the appellants, both of which, in the opinion of the court, were serious, but in as much as they will not in all probability arise upon a retrial of this case the court declines to discuss and pass upon the same.

For the reasons above stated, the cause is reversed and remanded for a new trial; and it is so ordered.