644 P.2d 531
**STATE of New Mexico, Petitioner,**

v.

**Rosinaldo ("Russ") QUINTANA,
Respondent.**

**No. 13816.**

Supreme Court of New Mexico.

April 29, 1982.

Jeff Bingaman, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for petitioner.

Michael Dickman, Appellate Defender, Santa Fe, for respondent.

## OPINION

RIORDAN, Justice.

Rosinaldo Quintana (Quintana) was convicted of voluntary manslaughter. Quintana alleged on appeal that the deathbed statement of Telesfor Lopez (Lopez), the decedent, was erroneously admitted into evidence. The Court of Appeals held that the admission of the statement was reversible error. We granted certiorari; and we reverse the Court of Appeals.

The issue on appeal is:

Whether Lopez' deathbed statement was a dying declaration that was properly admitted into evidence.

In the early evening of May 21, 1980, there was an altercation between two groups of men at the bridge that separates East and West Pecos, New Mexico.[1] One of the men from Lopez'[2] group smashed the windshields of three trucks belonging to men of the other group. After this incident, Lopez' group went to the Valencia residence in *East Pecos.* The residence was on top of a wooded hill off the main roadway. A bonfire was built, and the group sat outside by the fire and drank beer.

The other group drove their damaged trucks to Quintana's trailer. Quintana, for approximately seven months, had been the deputy marshal for the Village of *West Pecos* and a special deputy sheriff for San Miguel County. The men reported the incident to Quintana and he inspected the damage to their windshields. Quintana then got dressed in his official shirt and badge.

He borrowed a truck belonging to his nephew, a member of the group whose vehicles were damaged, because the tires on his police car were low and the car would not start. Quintana intended to investigate the incident.

First, Quintana drove to the bridge and observed the glass. The other men followed in their trucks. Then he drove to the Valencia residence in *East Pecos.* He parked the borrowed truck in the driveway where he could see the bonfire. He testified that when he got out of the truck, he identified himself twice as the deputy marshal and said he wanted to talk. He then heard several "pop shots" like the discharge of a small automatic weapon. He assumed that someone was shooting at him. He testified that he then shot his rifle into the air three or four times. Someone then grabbed Quintana and said "let's go"; the group left and returned to Quintana's trailer. Quintana denied ever shooting towards the group of men.

Members from the Lopez group testified that they were sitting by the bonfire. They saw a truck drive part way up the driveway, followed by other vehicles. They heard what they thought was a gun being fired. They ran for cover and heard more shots fired. After Quintana and the group of men left, Lopez was found hiding near a car. It was discovered that he had been shot, and he was taken to the hospital. All members of the Lopez group testified that none of them had any firearms. Also, they did not see who shot at them.

Lopez died May 26, 1980 from infection caused by a single gunshot wound. The bullet removed during the autopsy on Lopez was tested and found to have come from Quintana's rifle. Quintana was then charged with Lopez' death.

At trial, the State sought admission of a hearsay statement made by Lopez just before his death. The statement had been

---

1. West Pecos is an incorporated municipality on the west side of the Pecos River. East Pecos is an unincorporated community on the east side of the Pecos River.

2. Lopez' group included himself, his brother Joe Lopez and three brothers named Tony, Floyd and Frank Valencia.

elicited at the hospital by the attorney retained by Lopez' family to investigate the civil liability aspect of the shooting. The statement was admitted over Quintana's objection.

The family attorney testified that he went to the hospital on May 26th for the express purpose of obtaining a dying declaration from Lopez. He spoke to Lopez for two to six minutes. The attorney testified that when he went to the intensive care unit, he saw Lopez:

> wired to any number of machines. They were monitoring his heartbeat. They were monitoring his blood pressure. He had oxygen—he was breathing oxygen. They had his feet elevated. It was my understanding—and I saw that myself—it was my understanding that the reason they had his feet slightly elevated was because the kid was choking on his own blood. When I saw him and during the time that I spoke to him, his breathing was labored; his speech was somewhat difficult. During the entire time that I talked to him, the blood continued to ooze out of his nose and mouth and he was in great pain.

The attorney testified that during the conversation Lopez was conversant, conscious and lucid. Lopez was *never* told by his doctors that he was going to die; however, Lopez told the attorney that he knew he was very seriously injured; he knew that his back was broken, and he was paralyzed; and he knew that there was a strong possibility of dying. During the interview, the attorney elicited answers from Lopez as to circumstances[3] surrounding the shooting; however, Lopez was not able to identify the person who shot him.

The State asserts that Lopez' statements made to the attorney are admissible under New Mexico's Evidence Rule 804(b)(3), N.M. S.A.1978. Rule 804(b)(3) states:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

(3) *Statement under belief of impending death.* A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.

The admissibility of evidence is within the sound discretion of the trial court, and its ruling will be upheld unless there is a showing of an abuse of that discretion. *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979). We find there was no abuse of the trial judge's discretion.

A dying declaration is admissible when there is a showing that the statement was made under a sense of "impending death". When such a declaration is made, the declarant must be conscious and the realization of approaching death must exist. *State v. Stewart*, 30 N.M. 227, 231 P. 692 (1924). The determination as to whether the particular testimony is admissible must depend upon the particular circumstances of each case. *State v. Sanford*, 44 N.M. 66, 97 P.2d 915 (1939).

In determining "impending death", one is to look to the state of mind of the victim. *Stewart, supra.* Fear or even the belief that the illness will end in death is not enough for a dying declaration. There must be a settled hopeless expectation that death is near, and what is said must have been spoken in the hush of impending death. *Shepard v. United States*, 290 U.S. 96, 100, 54 S.Ct. 22, 24, 78 L.Ed. 196 (1933); *Stewart, supra.* The state of mind must be exhibited in the evidence and not left to conjecture. *Shepard, supra.* Therefore, a dying person can declare that he believes he is dying; however, there are no specific words that have to be spoken by the declarant. *Stewart, supra.* Alterna-

---

**3.** Lopez told the attorney that he and other persons were sitting around the fire. Shots were fired which took Lopez by complete surprise. He then tried to get into a nearby car for safety when he was struck by a bullet. He stated that he did not have a firearm with him. Also, he stated that to the best of his knowledge no one else in his group ever fired at anyone.

tively, if it can reasonably be inferred from the state of the wound or the state of the illness that the dying person was aware of his danger, then the requirement of impending death is met. *Id.; Territory v. Dick Eagle*, 15 N.M. 609, 110 P. 862 (1910). *Stewart, supra*, stated:

'In the trial of a murder case, if at the time of making declarations the condition of the wounded party making them, the nature of his wounds, the length of time after making the declarations before he expired, and all the circumstances make a prima facie case that he was in the article of death and conscious of his condition when he made the declarations, and [sic] such declarations should be admitted in evidence by the court. * * * '

*Id.*, 30 N.M. at 234, 231 P. at 695 (quoting *Jones v. State*, 130 Ga. 274, 60 S.E. 840, 840 (1908)). Therefore, a decedent does not have to be told he is dying; it can be obvious from the circumstances that death is impending. *Territory v. Dick Eagle, supra; Shuman v. State*, 94 Nev. 265, 578 P.2d 1183 (1978).

In *Johnson v. State*, 579 P.2d 20 (Alaska 1978), the court stated that under the Federal Rules of Evidence there is no longer the requirement that there be an abandonment of all hope of recovery. The only requirement is that the statement be made by a declarant while believing that his death was imminent. The Alaska Supreme Court stated that:

We believe that to require that the declarant have abandoned all hope of recovery is overly demanding. In light of modern medical science it is rare indeed that all hope of recovery is abandoned, yet a victim may be aware of the probability that his death is impending to the extent necessary to create sufficient solemnity to give adequate assurance of the trustworthiness of his testimony. What is required for a dying declaration to be admissible is that the declarant have such a belief that he is facing death as to remove ordinary worldly motives for misstatement. In that regard, the court may consider the totality of the circumstances including the presence or absence of motive to falsify and the manner in which the statement was volunteered or elicited.

*Id.* at 25 (footnote omitted). Also, the Nevada Supreme Court in *Shuman, supra*, stated that:

'[I]t is not necessary for the declarant to state to anyone, expressly, that he knows or believes he is going to die, or that death is certain or near, or to indulge in any like expression; nor is it deemed essential that his physician, or anyone else, state to the injured person that he will probably die as a result of his wounds, or that they employ any similar expression. It is sufficient if the wounds are of such a nature that the usual or probable effect upon the average person so injured would be mortal; and that such probable mortal effect is not hidden, but, from experience in like cases, it may be *reasonably concluded* that such probable effect has revealed itself upon the human consciousness of the wounded person. * * * ' [Emphasis in *Shuman*.]

*Id.* 94 Nev. at 269, 578 P.2d at 1185 (quoting *State v. Teeter*, 65 Nev. 584, 628, 200 P.2d 657, 679 (1948)). We agree with the Alaska and Nevada opinions.

██ Lopez' statements and circumstances surrounding his statements are sufficient to show that he believed his death was imminent. He stated that he knew that he was seriously injured; he knew his back was broken, and he was paralyzed; he also stated that there was a strong possibility of dying. The attorney also testified as to what he witnessed about Lopez' condition. He stated that he was hooked up to several machines and was oozing blood from his nose and mouth. Lopez died about three hours after giving the statement. Therefore, we hold that the dying declaration was properly admitted into evidence.

██ However, a dying declaration by no means implies absolute verity. It can be impeached. *Carver v. United States*, 164 U.S. 694, 17 S.Ct. 228, 41 L.Ed. 602 (1897). After the declaration has been found to be admissible, the defendant can impeach the statement in the same manner as the de-

fendant could impeach a witness. He can discredit the statement by showing that the deceased bore a bad reputation or that he did not believe in a future state of rewards or punishment. *Id.; State v. Gallegos*, 28 N.M. 403, 213 P. 1030 (1923).

Therefore, we find that the trial court did not abuse its discretion in admitting the dying declaration. The Court of Appeals is reversed and the trial court's verdict is affirmed.

EASLEY, C. J., SOSA, Senior Justice, and PAYNE and FEDERICI, JJ., concur.